MRS. W. G. ROBINSON, Appellant, v. SHELL PETROLEUM CORPORATION, Appellee.

No. 42143.

DECEMBER 12, 1933.

REHEARING DENIED MAY 19, 1934.

Sager & Sweet, for appellant.

Mears, Jensen & Gwynne, for appellee.

MITCHELL, J.—On Sunday, the 20th of July, 1930, the appellant was riding in a Ford car, driven by her daughter, near the town of Greene, Butler county, Iowa. Her husband and another person were also riding in the car. The car was being driven south on a public highway at the time of the accident. As it approached the intersection, a Ford Coupe, owned by the appellee, Shell Petroleum Corporation, driven by one Joseph G. Whitehill, was being driven west upon a public highway near the town of Greene, Iowa, which intersects the public highway upon which was proceeding the car in which the appellant and her companions were traveling. The car driven by the said Joseph G. Whitehill and owned by the Shell Petroleum Corporation ran into and collided with the car in which the appellant was riding. The accident occurred in broad daylight. Both cars went into the ditch on the right of the highway on which the appellant was proceeding. The car in which Mrs. Robinson was riding struck a telephone pole located on the west side of said highway, with such force that the pole was broken and fell upon the car in which she was riding, and the appellant received severe injuries. The appellant commenced an action for damages against Joseph G. Whitehill, the driver of the car, and the Shell Petroleum Corporation, the owner of the car. Upon her motion the action was dismissed as against Joseph G. Whitehill without prejudice. The action was an action for damages because of personal injuries, based upon section 5026 of the Code of 1931. The appellee, Shell Petroleum Corporation, filed an answer to the appellant's petition, and the case proceeded to trial.

The main defense relied upon by the appellee, and the only one necessary for us to consider, was that, while the car belonged to the Shell Petroleum Corporation, the driver of the car, Joseph Whitehill, was not driving the car at the time of the accident with the consent of the Shell Petroleum Corporation. The record shows that Joseph Whitehill had been employed as a salesman continuously since some time prior to May, 1929, by the Shell Petroleum Corporation; that he was first employed in Marshalltown, Iowa; that some time in September of 1929 he was transferred from Marshalltown to West Union, Iowa, and his territory after September of

1929 was confined to Allamakee and Winneshiek counties, and the north half of Clayton county, and the north half of Fayette county; and while in the employ of the Shell Petroleum Corporation a letter was sent by the company to all salesmen, including Mr. Whitehill. Mr. Whitehill on the witness stand acknowledged receipt of the letter. The letter was marked as an exhibit and was introduced in evidence. It is as follows:

"Moline, Ill., May 17, 1929.

"In Re company cars

"Circular Letter No. 627.

"Shell Petroleum Corporation.

"To all Salesmen:

"Gentlemen:

"It has been called to the attention of this office that company cars are being used for other than company business, in some instances entirely outside of the salesman's territory. Whenever it is necessary for a salesman to drive his car out of his territory he will do so by instructions or obtaining permission from this office. We wish it thoroughly understood that these cars are furnished for use on company business only.

"Yours very truly,

"Shell Petroleum Corporation,

"By C. Reddish."

The record also shows that at the time Mr. Whitehill was transferred from the Marshalltown territory to the West Union territory, which was in the month of September of 1929, he was called to Moline, where the division or branch office that had charge of the territory in which Mr. Whitehill worked, was located, and was there informed that the cars belonging to the Shell Petroleum Corporation were to be used for company business only. Mr. Whitehill testified in regard to the conversation at Moline as follows:

"Mr. Agnew was head of the automotive department at that time and he told me that my car was in the paint shop at Elgin, Illinois, being painted and that as soon as it was finished he would notify me where to get it, whether to go there or where it would be delivered and for me to come and get it. He asked me if I understood the automotive instructions and if I understood that the car was to be kept in my territory and used for business only.

I told him that I had been driving a company vehicle for over a year and that I thought I knew the instructions."

The uncontradicted evidence shows that the day of the accident was Sunday. That Mr. Whitehill was a baseball player; that his specialty on the diamond was pitching. That he understood the art of throwing the baseball so that his services were demanded by nearby towns who were interested in beating their neighbors in the national game. On the day of the accident, without having secured the consent of the Shell Petroleum Corporation, Whitehill took the car belonging to the Shell Petroleum Corporation, and together with the superintendent of schools at West Union, Iowa, started for the town of Clarion in Wright county; Clarion being a distance of about 110 miles from West Union. He was going to Clarion to pitch for the Clarion baseball nine, and was to receive from the Clarion team the sum of $25 for pitching the game. The trip from West Union to Clarion was not in any way connected with any business of the Shell Petroleum Corporation, but was purely and solely for the purpose of participating in a baseball game at Clarion, and, incidentally, of securing the $25 that the Clarion baseball team had agreed to pay him for pitching the game. The accident, out of which this suit grew, occurred on the way from West Union to Clarion. After the accident Whitehill proceeded to Clarion. He had been delayed some time in arriving at Clarion, due to the accident, and the ball game had started; but upon his appearance the Clarion pitcher was taken out and Whitehill entered the game. It seemed that this was an exceedingly unlucky day for Whitehill, for, after pitching three innings, Whitehill turned or twisted his knee and had to be taken out of the game. However, he received the sum of $12.50 for pitching the three innings.

At the end of the testimony, both sides having rested, upon motion of the appellee for a directed verdict, setting up among other grounds that the appellant had failed to prove when the accident occurred that the car driven by Whitehill was being driven with the consent of the appellee corporation, the court sustained the motion for directed verdict, and upon the direction of the court the jury returned a verdict for the appellee, Shell Petroleum Corporation. From such ruling the appellant has appealed to this court.

Appellant bases her right to recover upon section 5026 of the Code of 1931, which is as follows:

"5026. Liability for damages. In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

This question has lately been before this court, and in a very recent opinion Chief Justice Albert discussed at length this statute and reviewed the cases which have been before this court in the past few years. In the case of Heavilin v. Wendell, reported in 214 Iowa 844, at pages 846 and 847, 241 N. W. 654, 655, 83 A. L. R. 872, it is said:

"Until the adoption of what is now section 5026 of the Code, to wit, chapter 275, Acts of the 38 Gen. Assem., passed by the Legislature in 1919, there was no specific provision in the code governing such a set of circumstances. A part of section 12 of the aforesaid act reads as follows:

" 'And in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage.' (Now section 5026 of the Code.)

"Until the passage of this act, this court consistently held that, where a car was being driven by a person other than the owner, without the consent of the owner, the owner was not liable for damages growing out of the negligence of such driver, and this was our holding in cases to be discussed later herein.

"The question at this point is whether or not the enactment of this section by the Legislature changed the rule theretofore announced by our opinions.

"The first time this new statute came before this court, so far as we are able to find, is in the case of Rowland v. Spalti, 196 Iowa 208, 194 N. W. 90. In that case we said:

" 'It is true that, in the instant case, the defendant did consent that Leo should drive the car to Knoxville, and had the collision occurred while making that trip so authorized it may be assumed that the father would have been liable for the son's negligence, but it surely may not be said that the consent given for the Knoxville trip operated to expose the parent to liability for the wrongful act of the son in departing from or exceeding the authority so given him.'

"In the case of Curry v. Bickley, 196 Iowa 827, 195 N. W. 617, we said:

" 'But, in any event, the inference that a car is being operated at a given time by the owner, or with his consent, does not require that every case shall go to the jury, where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome.'

"In Maine v. Maine & Sons Co., 198 Iowa 1278, loc. cit. 1282, 201 N. W. 20, 22, 37 A. L. R. 161, we said:

" 'So it has been held under the statute that, where the owner has consented to a particular use of his car, the negligence of the driver, while using the car for some purpose of his own, and beyond or outside the terms of the consent given, will not render the owner liable.'

"In Seleine v. Wisner, 200 Iowa 1389, 206 N. W. 130, we said:

" 'We have also held that an allegation of ownership carries with it an inference of law, to wit, that the car was operated by the owner or, if by someone else, that it was with the owner's consent. This is a mere inference and is recognized as a weak one, but sufficient to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, the car was operated.'

"In the case of Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 573, 221 N. W. 514, 516, there was a total absence of evidence on the part of the defendant as to how the party came to be driving the owner's car. We there said:

" 'The question of ownership and consent, under the facts in the instant case, was clearly for the jury to determine. Had there been any evidence that the consent or permission given Swearingen (the driver of the car) was in any way limited, the cases relied upon by appellant might find application.'

"In Landry v. Oversen, 187 Iowa 284, at page 286, 174 N. W. 255, 256, we said:

" 'The proof of ownership of the automobile at the time of the collision merely makes out, *prima facie*, that the automobile was being operated for the owner, and to avoid a finding to this effect there must be some showing to the contrary. The strength of the *prima facie* showing necessarily depends on the circumstances of each particular case.'

"We also laid down the rule in this case that the burden of

proof is on the party asserting the fact that the car was driven with the owner's consent and does not change.

"It is apparent from these holdings that we have consistently held that, where the owner loans a car to another, for a specific purpose, and the party uses it for some other or different purpose, the owner is not liable for the negligence of the driver of the car while he is using it for such other or different purpose. Plaintiff having alleged that the car was driven with the consent of the owner, as said in the Landry case, supra, he has the burden of proving or establishing this fact, and there is no burden on the defendant. Proof of ownership raises an inference of consent as said in Seleine v. Wisner, 200 Iowa 1389, 206 N. W. 130. He may negative this inference by proof that there was no such consent, and, in the case at bar, both the driver and the owner of the car testified that the consent to drive the car was limited to that of going from the residence to the drug store to get medicine for the wife of Ersland, and this testimony is uncontradicted by any facts or circumstances proven in the case which would tend to cast doubt or uncertainty on the testimony of the owner and the driver of the car. At this point, therefore, it must be held, as a matter of law, that the evidence in this case conclusively overcomes said inference, and the plaintiff failed to carry the burden of proving that the car was being driven with the consent of the owner. Such is the effect of our holdings in Reynolds v. Buck, 127 Iowa 601, 103 N. W. 946; Sultzbach v. Smith, 174 Iowa 704, 156 N. W. 673, L. R. A. 1916F, 228; Hall v. Young, 189 Iowa 236, 237, 177 N. W. 694; and Baldwin v. Parsons, 193 Iowa 75, 186 N. W. 665. The first three of these cases were decided on accidents which occurred before this statute was adopted; the Baldwin case and the other cases cited in the prior part of this opinion after and under the statute."

It will thus be seen from the case just cited that "proof of ownership raises an inference of consent as said in Seleine v. Wisner, 200 Iowa 1389, 206 N. W. 130"; that this inference may be negatived by proof that there was no such consent. So in the case at bar there is no dispute that the car belonged to the Shell Petroleum Corporation, the appellee. But the uncontradicted evidence shows that it was being driven on Sunday, against the explicit orders issued by the Shell Petroleum Corporation, without the consent of the Shell Petroleum Corporation, and was being driven, not on

business connected with the Shell Petroleum Corporation, but for the business and pleasure of Mr. Whitehill.

Thus, in face of such a record, where the evidence stands uncontradicted, the trial court had no other alternative than to sustain the motion for a directed verdict, and the judgment of the lower court must be, and it is hereby, affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.