HELEN HUNTER, by DAN HUNTER, her next Friend, Appellee, v. JOHN IRWIN et al., Appellants.

No. 43067.

694

OCTOBER 23, 1935.

Gill & Gill, for appellants.

Kass & Kass, for appellee.

RICHARDS, J.—In the forenoon of July 25, 1934, plaintiff was traveling in an automobile being driven by one Maxine Hunter in an easterly direction upon a public highway located between Monona and Woodbury counties. As the car approached the Wiley farm residence, located on the south side of this highway, defendant Irwin driving in a northerly direction an automobile owned by defendant Martin emerged from the private driveway of the Wiley home onto the public highway mentioned. A collision resulted upon the traveled portion of the highway, bringing about the physical injuries for which plaintiff seeks damages in this action.

■■■ Plaintiff's cause of action, as against defendant Irwin, was grounded upon two specifications of negligence, first, that defendant coming from said driveway failed to stop immediately before entering the highway, and, second, defendant Irwin in driving said automobile from said private driveway onto said highway failed to keep a proper lookout for others who might be lawfully using said highway. Defendant Irwin moved for a directed verdict in his favor, bottomed on the proposition that there was no evidence of negligence on his part that was the proximate and direct cause of plaintiff's injury. The overruling of this motion is assigned as prejudicial error. Pertinent to this assignment of error there was evidence from which the jury could have found the following facts: That the highway and private driveway were practically level, located in a region flat for long distances in all directions; that the traveled portion of the highway was 21.6 feet wide; that the

view to the west, of one traveling north on the private drive-way toward the highway, was obstructed by a windbreak of small trees along the west side of the driveway to such an extent that a car approaching on the highway from the west would not be visible until a point was reached where the driveway enters the highway, which point was 17.8 feet south of the south line of the traveled portion of the highway; that the car in which plaintiff was traveling eastward, at 30 or 35 miles per hour, was a short distance, less than 200 feet, west of the driveway when defendant Irwin drove into the highway; that the defendant drove into the highway at the same rate of speed at which he had been driving as he came along the driveway, that is 10 to 15 miles per hour, and made no stop whatever before entering the highway; that he proceeded northerly onto the traveled portion of the highway, and when his car was about in center of road, he started to turn toward the west at which instant the front end of the car approaching from the west collided with the left side of defendant's car; that the car coming from the west had almost reached the driveway when Irwin drove out in front of it; there was not time to do very much except put on the brakes of the eastbound car and that did not stop it in time to avoid the collision. Section 5035, 1931 Code, is in following words:

"5035. Preference at intersecting points—alleys. Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

Under the provisions of this section, defendant's view being obstructed as above set out, he owed a positive duty to stop his car immediately before entering the public highway from this private drive. The duty to stop is accompanied by an implied duty to use the senses of sight and hearing to ascertain the presence of danger. See Wood v. Branning, 215 Iowa, 59, 244 N. W. 658. These duties Irwin violated. Upon the above facts which the jury could have found there was warrant for

a verdict that defendant Irwin was negligent, and that such negligence was the proximate cause of plaintiff's injuries.

**III** The cause of action against defendant Martin is based on the claim that his car was being operated by his consent at the time of the collision, and is grounded on section 5026, Code 1931, which is as follows:

"5026. Liability for damages. In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

Defendant Martin was the owner of the car which was being driven by defendant Irwin. But Martin denies that at the time of the collision the car was being driven by his consent and there is no evidence establishing any express consent thereto given by Martin. As to implied consent on his part, the jury from the evidence could have found the following facts: That at the time of the accident in question defendant Irwin was twenty-two years old; at the age of ten years he had been taken from St. Anthony's Home in Sioux City into the home of defendant Martin and his wife; Irwin was not adopted by the Martins nor in any way related to them, and lived in their home from the age of ten years until he graduated from school at the age of eighteen years; that after graduating he departed during that summer and in the fall of that year he was working and living in town two months employed in a garage, and at other periods he was absent from the Martin home while working for others; as a boy Irwin did the usual chores around the farm; attended public schools, had his own room in the home, had his meals at the table with the family, and a feeling of regard and affection existed between him and the Martins; he attended church with the Martins; that Martin had purchased the car in question in 1926, for himself and family to go to church and for their pleasure, and from that time until the accident Martin used it whenever he had occasion to use a car. The jury also could have found from the testimony that Irwin was seen by each of several witnesses driving the Martin car a number of times upon the highway and in the town of Sloan, sometimes to and from the Martin home, sometimes alone, sometimes driving with Martin in the

car, at other times riding while Martin was driving; that these occasions were more frequent in 1933 and prior, but some were also allocated in 1934 prior to the accident, though some uncertainty was expressed in some of the testimony as to it being in 1934. On the other hand, it is the testimony of Irwin and Martin, uncontradicted by direct evidence, that in November, 1933, after Irwin had reached his majority in the preceding July, Martin employed Irwin as a farm hand, and told Irwin not to drive the Martin car, and that he, Martin, would furnish funds to assist Irwin to buy a car of his own; that about December 1, 1933, Martin furnished funds for that purpose and Irwin purchased a car which he used until he disposed of it about March 1, 1934, on about which date Martin again employed Irwin as a farm hand for the farming season of 1934, at an agreed wage of $25 per month with board and lodging; that as part of this arrangement Irwin agreed to henceforth furnish his own transportation, and as part of the deal Martin told Irwin that Irwin was not to use the Martin car in which Irwin acquiesced; that this arrangement continued up to the time of the accident; that in pursuance of the arrangement that Irwin was not to drive the Martin car Irwin made arrangements with a neighbor, one Lamoureux, to use his car, paying one-half of the operating expense; that Martin expressly forbade Irwin to use the Martin car after March 1, 1934. In corroboration, Lamoureux testified that from about March 1, 1934, and thereafter this arrangement continued between him and Irwin, Lamoureux and Irwin using the Lamoureux car in common, each paying one-half of the operating expense, the car being kept sometimes at Lamoureux's home, sometimes at Martin's, Irwin driving the car when he used a car, and part of the time going to church in this car with the Lamoureux family. The evidence further shows without contradiction that on the morning of the accident Irwin was still working for Martin as a farm hand and on that morning Martin had sent Irwin with a team, wagon, and scoop to haul cobs from a sheller at the nearby farm of Martin's sister; that Martin drove his car unaccompanied to the same place to look after his sister's interests; that after the shelling began some controversy arose with the elevator buying the corn, whereupon the sheller was stopped and Martin and his sister, in the latter's car, immediately drove to town to adjust the controversy, Martin leaving

his car parked inside the yard at his sister's home; that Irwin's job of hauling cobs being thus interrupted, he took the Martin car, after Martin's departure, and drove the same the short distance of about one-half mile to the Wiley home where he visited a few minutes on an errand of his own, and was returning to the place of the corn shelling as he drove out of the Wiley driveway into the place of the accident. Martin's testimony and that of Irwin is uncontradicted that no permission to use the car on this morning had been given by Martin; they also testified that this was the only time Irwin drove the Martin car after December, 1933. It was also the testimony of Martin and Irwin that at all times prior to the accident, including 1933, and prior years, Martin had told Irwin not to use the car and Irwin was reprimanded by Martin on the occasions he disobeyed these instructions.

Defendant Martin at the proper time filed a motion for a directed verdict in his favor on the ground that there was not sufficient evidence on which to submit to the jury the issue as to the Martin car having been driven by consent of Martin at time of the accident. Defendant Martin's contention that the court erred in overruling this motion we now proceed to consider. At the outset, the ownership by Martin of the car driven by Irwin being established, we encounter the settled rule that such ownership merely makes out, prima facie, that the car was being operated for the owner, and to avoid a finding to this effect there must be some showing to the contrary. This rule of itself is of no greater weight than is required to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, it was being driven. Its effect is not to change the burden of proof, that continuing on the complaining party throughout the trial. Baldwin v. Parsons, 193 Iowa, 75, 186 N. W. 665. The inference involved in the rule is recognized as a weak one, but sufficient to accomplish the purposes of revealment above mentioned. In the trial of a case, after the inference has accomplished this purpose of revealment that was the purpose of its adoption, it is consistent with our prior holdings to conclude that the inference of itself thereafter does not have evidential weight, this court having laid down the rule in Curry v. Bickley, 196 Iowa, 827, 832, 195 N. W. 617, 619, that the inference mentioned "does not require that every case shall go to the jury, where the undisputed

and uncontroverted evidence establishes the facts so conclusively that the inference is overcome." In harmony therewith, in Heavilin v. Wendell, 214 Iowa, 844, 241 N. W. 654, 83 A. L. R. 872, it was held that the inference involved in this rule may be negatived by proof that there was no consent given to drive the car. In that case the uncontradicted evidence of the owner and the negligent driver was that the owner had consented that the driver use the car in going to and returning from a specified destination, but the driver without other permission than stated proceeded on a more extended use of the car, and, while so doing, caused the injuries to the plaintiff in that case for which damages were sought from the owner. This court, finding that this testimony was uncontradicted by any facts or circumstances proven in the case which would tend to cast doubt or uncertainty thereon, held as a matter of law that the evidence conclusively overcame the inference founded on ownership. In the case of Robinson v. Shell Petr. Corp., 217 Iowa, 1252, 251 N. W. 613, plaintiff sought to recover from the owner of the car damages resulting from the negligence of its employee while driving the car, allegedly by consent of such owner at the time of the accident. The uncontradicted evidence showed that the driver was an employee of the defendant; that as such employee the car was in the driver's possession to use in defendant's business; that defendant by letter and oral statement had forbidden the use of the car for any other than business purposes; at the time of the accident the car was being used for no business purpose but for the employee's own pleasure. It was held that the uncontradicted evidence showing that the car was being driven against the explicit orders of the owner, and so without the owner's consent, there was no other alternative than to sustain a directed verdict for the defendant owner.

 Applying the above authorities to the case at bar, the testimony of the owner and driver of the car that there was no consent was uncontradicted by any direct evidence. Plaintiff was entitled, if he could, to rebut this testimony by direct evidence or by inferences from facts and circumstances. Plaintiff has offered only facts and circumstances upon which she claims the jury might rightly base an inference that Martin consented to the driving of the car on the occasion in question regardless of defendant's testimony. These facts and circumstances may be summarized as follows: First, that Irwin sus-

tained the relation of a foster child of Martin's, making applicable the "family car" doctrine as establishing an implied consent that Irwin drove the car at the time in question, and, second, the fact that witnesses testified that on numerous occasions Irwin was seen driving Martin's car on the highways. The situation as it existed at the time of the accident should not be confused with the relationship between Martin and Irwin while the latter was a child being cared for in the family of Martin. The evidence must be applied to the situation in July, 1934, when the accident happened, Irwin then being twenty-two years of age, and beyond question out in the world "on his own" as is the expression, carrying on as one who had reached the status of maturity dependent on himself alone. There had ended the relationship of parent and dependent child, if it can be said to have existed at all, upon which depends the so-called "family car" doctrine. It is undisputed that even earlier than reaching his maturity, after graduating from school, Irwin departed from the Martin home and during some months was engaged in his own enterprises. Thereafter, for a considerable period, he was employed as a mechanic, disconnected with the Martins or their home, in an occupation entirely his own. It is established that at other periods he was engaged in employment by others than the Martins. It is established also beyond question that during the summer of 1934 he was in the employ of Martin as a farm hand, this employment having commenced some time in the winter preceding, all of which undisputed facts in our opinion make inapplicable in this case the "family car" doctrine and any inferences therefrom. Mooney v. Canier, 198 Iowa, 251, 197 N. W. 625. With reference to the second proposition, that Irwin was seen driving the Martin car, as a fact or circumstance rebutting the testimony of Martin and Irwin that Martin had specifically ordered Irwin not to drive the car, there is more in the evidence than their testimony on this point. There is established the fact that in December, 1933, Irwin acquired a car of his own, Martin financially assisting him in so doing, which car Irwin drove until about March 1. It is established without question that on March 1, Martin employed Irwin as a farm hand for the summer 1934, and their testimony that a part of the agreement was that Irwin was to furnish his own transportation and not use the Martin car is sustained by undisputed and unquestioned evidence of Lamou-

reux that thereafter Irwin carried out an arrangement by which he used up to the time of the accident on a sharing of expense basis, the car of the neighbor Lamoureux. It is true, as plaintiff claims, that several witnesses testified that they saw Irwin driving the Martin car during 1934 prior to the accident, or that it seemed to them that it was during that period. But they do not fix any definite times or places susceptible of identification or explanation by rebuttal evidence. Upon this showing plaintiff claims the question of consent became a jury question in that the jury would be warranted in finding that Martin had given implied consent to the use of the car by Irwin, from which the jury might find that at the time of the accident Irwin was driving the car by consent of Martin. We are constrained to hold that the evidence was not sufficient to warrant such a finding by the jury, because "verdicts must have evidence to support them, and must not be founded on mere theory or conjecture." Boeck v. Modern Woodmen, 162 Iowa, 159, 143 N. W. 999, 1002. The instances of Irwin's driving the Martin car during 1934 as testified to were not of such frequency as to warrant basing thereon an inference of a systematic conduct on part of Irwin, knowledge of which might be claimed to be inferable to Martin. Nor is there any direct evidence that Martin knew of, much less consented to, these instances as related by plaintiff's witnesses, the nearest approach being one instance when Martin and Irwin were said to have been seen in the car together. Considered in its most favorable light, the testimony of these witnesses laid down only a foundation for conjecture as to Martin's knowledge or consent. We do not find therein anything of substance, distinguished from mere conjecture, upon which the jury could have found that as a matter of fact Martin had knowledge of these alleged instances of Irwin's acts. Without such knowledge, there is no basis of fact on which to infer that Martin had extended an implied consent authorizing Irwin to drive the car at the time in question. We have examined the cases of Lange v. Bedell, 203 Iowa, 1194, 212 N. W. 354, and Wolfson v. Jewett Lbr. Co., 210 Iowa, 244, 227 N. W. 608, 230 N. W. 336, cited by plaintiff, in which the consent of the defendant owner was an issue and in which cases it was held that the question was for the jury, although the owner and others had testified to lack of consent without direct contradiction. But in each of these cases the facts and

circumstances proven in rebuttal were in some respects significant of consent, and it was rightly held that the facts and circumstances proven tended to negative the testimony of the defendant owner. In the case at bar we do not find facts or circumstances such as determined the issue in the two cases last mentioned.

We hold that the motion of defendant Martin for a directed verdict should have been sustained and that the court erred in overruling the same.

We have examined the other errors assigned and find they are in part disposed of by our foregoing conclusions and that the remainder are without merit.

Appellants' motion to strike appellee's amendment to abstract submitted with the case is overruled.

Accordingly, the case is affirmed on appeal of defendant John Irwin and reversed on appeal of defendant William Martin.

Affirmed in part; reversed in part.

KINTZINGER, C. J., and ALBERT, DONEGAN, and PARSONS, JJ., concur.