JANE ETHEL ALCOCK, formerly JANE ETHEL WILLIAMS, Appellant, v. HUBERT KEARNEY et al., Appellees.

No. 44965.

DECEMBER 12, 1939.

REHEARING DENIED APRIL 5, 1940.

Kepford, Heath & Kepford and Swisher, Swisher & Cohrt, for appellant.

Reed & Beers, for appellees.

SAGER, J.—This case has been before us on another occasion. See Williams v. Kearney, 224 Iowa 1006, 278 N. W. 180. Difference in the names of plaintiff is accounted for by the fact that plaintiff has been married since this action was instituted. The outline of facts in that opinion, and the nature of the action as there stated, makes it unnecessary that we do more than to review such evidence as bears on the question before us: Does the record present a jury question, or was the non-consent of the defendant to the use of its truck so conclusively shown as to make it a question of law for the court?

We take from appellee's argument as an accurate statement of that part of the record it assumes to cover, the following:

"George Davis was an employee of the Melrose Company and had been for several years. The Melrose Company was a company engaged in manufacturing and distributing ice cream

and distributing beverages with some ten or twelve trucks. Davis was a truck driver salesman on a beverage route. He worked six days a week driving his beverage truck over a fixed route. He did not work Sundays. This accident happened on Sunday. Davis did not deliver ice cream. On this particular Sunday Kearney, who had a barber shop next door to the Melrose Company Garage and whom Davis knew, asked Davis if he would help him get his car, which was broken down on Logan Avenue a mile or so from the Melrose plant.''

The record does not disclose what took Davis (a brother-in-law of Sorenson) to the defendant's plant on this Sunday; but, having been in its employ for four or five years, it is not surprising that he should have been there in his ''off-time''. Davis was employed by Sorenson, vice president and general manager, and from him took orders as to what to do and when. He had a key to the company's garage but did not have it with him on the day he took the truck. Being solicited by Kearney to help move a stalled automobile, Davis said he would if he could. His testimony continues in effect:

''I got permission to use the truck from E. F. White. He said I could use the truck. I didn't tell him where I was going. The truck I took was not the one I used on my beer route. I have no written contract of employment, nor written instructions as to what my duties were. White was in charge of defendant's business when Sorenson was away. It was he who gave me permission to take that truck. My work, as a truck driver salesman, brought me in contact with regular customers, and I took orders only from those upon whom I regularly called. I was the only driver who delivered beer in the city but had nothing to do with the delivery of ice cream.''

White, as a witness for the defendant, testified that he was employed by Sorenson and was in the office all the time looking after supplies and ordering things as needed. He made no initial orders but would make repeats. Sorenson made the original orders and directed generally the business of the defendant. White had nothing to do with trucks except that, if a special order came in and he could not find the driver on the route from which the order came, he would make the delivery himself. White remembered Davis' call that Sunday morning on No-

vember 8th and his request for permission to take the truck. White testified:

"I was in the office that morning, it must have been to get an order. * * * I am quite sure it was to get ice cream. * * * Davis come in the back door and he said, 'I am going across the river with Kearney, I am going to take a truck.' That was as much his business as mine. I said, 'Be very careful, it is slippery.'

"Q. He took the truck? A. Yes.

"Q. Had you ever given him permission to take the truck before? A. No.

"We did not use company trucks for personal business. I had never been given authority to permit the men to use the trucks for their personal affairs. I am the head man in the office since December 16th, 1936; Sorenson was on November 8th, 1936, and at that time gave all orders. Since then I have given orders on certain things in the office such as ordering beer and the collection of accounts. Sorenson is away at times. This was true in 1936. He was out of the city for extended periods and it was his custom to go fishing and hunting every year one or more times. When he is away I am in charge to the extent of seeing that the orders are filled and that the plant is opened and closed. If anything comes up in the conduct of business when Sorenson was away, I would handle it. When he was not there, I was not entirely in charge. In case there would be some major question come up, I am in constant touch with him wherever he is. As to any matter that came up, I would either use my judgment or contact Sorenson to find out. Sorenson was not about the plant on the morning of November 8th. I had no authority to allow a truck to go out for any other business than an order or something in connection with the business."

Sorenson, vice president of the company, said in effect that he was general manager of the company since 1932, having control of the hiring and discharging of men, the fixing of wages, setting prices, and was the directing and managing officer of the defendant. He said that White was office manager in charge of the office, ordering different materials used, but always under his supervision. White had nothing to do with the trucks. Of these Sorenson had exclusive control, and the direction of the

men who were to use them. Sorenson testified that he had at no time authorized White or anyone else to permit the men to use company trucks for personal use and had no knowledge of anyone having done so without first having asked him (Sorenson). When he was away, no one in particular was in charge. Everyone had established routes. Sorenson was away every year for some periods of time.

On such a record was the trial court right in directing a verdict for the defendant?

Plaintiff's petition alleges that the defendant's truck was "driven by the said George Davis as an employee and in the course of his employment for the Melrose Company and/or Melrose Ice Cream Company, defendants herein, and his employer." Defendant's answer was a general denial. Notwithstanding the issue as thus made up, appellee states the question before us in the following language:

"* * * the only question involved in this appeal is whether the defendant George Davis did or did not have the consent of the Melrose Company to drive its truck at the time of the accident * * *."

Both parties cite these cases, drawing therefrom opposite conclusions: Landry v. Oversen, 187 Iowa 284, 174 N. W. 255; Lange v. Bedell, 203 Iowa 1194, 212 N. W. 354; Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Robinson v. Shell Petroleum Co., 217 Iowa 1252, 251 N. W. 613; Hunter v. Irwin, 220 Iowa 693, 263 N. W. 34; Curry v. Bickley, 196 Iowa 827, 195 N. W. 617; and Heavilin v. Wendell, 214 Iowa 844, 241 N. W. 654, 83 A. L. R. 872.

It would serve no useful purpose to analyze these authorities. Each case must be decided upon its own facts in the light of the principles heretofore announced. Appellee aptly says that our cases on this subject fall generally into three categories: First, the so-called family car cases; second, where no authority was given; and third, those wherein authority was given, but the limits of consent were exceeded.

We are not concerned here with cases of the first class; nor of the third, because, if consent be found on the record, there was no limit to the use to which it was to be put. Plaintiff's case is bottomed, as appears from the quotation from his petition noted above, on the charge that defendant's truck was

being driven by Davis "in the course of his employment for the Melrose Company \* \* \* his employer." As we read the record we fail to find any evidence to support this kind of a case and the fact that appellee assumed or conceded that it was a case under section 5026, 1935 Code, does not alter the nature of the case.

We have heretofore held that a cause of action based on the master and servant relation is entirely different from the cause of action predicated on the Code section just quoted. See Page v. Koss Construction Co., 219 Iowa 1017, 257 N. W. 426. The court was compelled to try the case as the issues were made up, and plaintiff having failed to show that Davis was in fact acting in the scope of his employment, the court could do nothing but sustain the motion to direct as to the Melrose Company. We have examined not only the cases cited above but others called to our attention by the briefs and we find none which requires a different conclusion.

It follows that the court was right in directing a verdict for the defendant. The case is accordingly affirmed.—Affirmed.

HAMILTON, HALE, MILLER, and BLISS, JJ., concur.

OLIVER, C. J., and MITCHELL and RICHARDS, JJ., dissent.