**William Henry WEBB, Appellant,**

v.

**Helen MORENO and Fredrick Cornell Priester, Appellees.**

**No. 18253.**

United States Court of Appeals
Eighth Circuit.

July 14, 1966.

Harry E. Wilmarth, of Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellant; Caryl W. Garberson and James H. Carter, of Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on the brief.

David M. Elderkin, of Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, Iowa, for appellees.

Before VOGEL, Chief Judge, and MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

In this personal injury diversity case, the jury rendered a verdict in favor of Helen Moreno, plaintiff below, and against William Henry Webb and Fredrick Cornell Priester, defendants below, in the amount of $23,750.00. From the judgment entered on the verdict only Webb has appealed. Priester, who has not appealed, is an appellee in this court.

The automobile collision from which this litigation emanates occurred in Iowa, and the substantive law of that state controls.

The basic facts were established by uncontradicted evidence. In July, 1964, appellant was the owner of the Chevrolet automobile involved in the collision. On the evening of July 11 (Saturday), pursuant to appellant's consent, William Henry Webb, Jr., then 18 years of age and a member of appellant's household, operated the automobile from the Webb home in Davenport, Iowa to Cedar Rapids, Iowa, a distance of 60 to 70 miles, in order that young Webb could spend that night and the next day visiting with Douglas Fulrath, a former school chum, who resided in Cedar Rapids. Unbeknownst to appellant, young Webb arranged for his long time friend, Fredrick Cornell Priester, also 18 years of age, and Priester's girl friend, Gretchen Stegmeier, both residents of Davenport, to accompany him on the trip to Cedar Rapids.

After the three arrived at their destination they, in company with Fulrath and a young lady, attended a dance in Cedar Rapids. At approximately 12:30 o'clock that night, the party of five returned to Fulrath's home in that city. Priester was confronted with the necessity of returning Gretchen to her home in Davenport. Young Webb, who desired to spend the night with Fulrath, entrusted Priester with the automobile for that purpose. It was understood that Priester was to drive back to Cedar Rapids. After Priester had completed the journey to Davenport, he departed for Cedar Rapids, leaving at approximately 3:00 o'clock Sunday morning. While traveling toward his destination, he fell asleep at the wheel and drove the automobile into the rear end of the vehicle in which Mrs. Moreno was riding. She sustained serious injuries as a consequence of the collision.

At the close of all of the evidence, appellant moved the court to direct a verdict in his behalf on the ground that plaintiff had failed to prove that his

automobile was being operated by Priester with the knowledge and consent of appellant. In denying the motion, the court stated: "Gentlemen, it is a close question. The court is of the view, however, that a jury question is generated, * * *."

Appellant's sole contention on appeal is centered around the issue of consent. He asserts, in effect, that the evidence conclusively established that Priester was driving the automobile without the consent of the owner when the collision occurred, and that consequently the court erred in failing to direct a verdict for appellant.

■ We turn then to the evidence bearing upon that question, and of course, review the evidence in the light most favorable to appellee Moreno.

Appellant purchased the Chevrolet automobile in December, 1962. He owned another automobile. Appellant consistently permitted his son, William, Jr., who obtained a driver's license in 1962, to drive the Chevrolet when he so desired. During young Webb's senior year in high school, his father permitted him to drive the automobile to Beloit, Wisconsin and to retain exclusive possession thereof for several days. When William, Jr. obtained his driver's license, (1962), his father instructed him not to permit any other person to drive the automobile. Appellant testified that he had not, subsequent to the initial admonition, instructed William, Jr. not to permit others to drive the automobile. Indeed, there is evidence in this record from which the jury could believe that appellant was aware of Priester having driven the automobile on at least five occasions prior to July 11, 1964. As stated at the outset, Priester and Webb, Jr. had been close friends for many years. They visited each other in their respective homes. Young Webb drove Priester's automobile and vice versa. Although, as shown earlier, appellant was unaware that Priester and Gretchen were going to accompany his son on the trip to Cedar Rapids, the fact is that appellant did not impose any restrictions on the use of the automobile during that trip. When appellant was asked "and you certainly didn't tell him when he left to go to Cedar Rapids not to let anyone drive the car", he responded, "no, I didn't." Appellant also admitted that he knew from the time his son started to drive, that on occasions there would be other young people in the automobile; that he made no inquiry as to whether there would be "dates" on the Cedar Rapids trip. In fact, appellant made no attempt to ascertain who, if anyone, intended to make the trip with his son. Appellant also stated that he would not have objected to Priester and Gretchen accompanying his son. Finally, appellant conceded that if he had been requested to do so, he probably would have consented to Priester driving the automobile.

Section 321.493, Iowa Code Annotated, provides in pertinent part: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."

■ This statute has been the subject of judicial consideration on repeated occasions. The Supreme Court of Iowa has reviewed cases, too numerous to cite, which presented the question of whether the motor vehicle was driven with the consent of the owner within the meaning of Sec. 321.493. We have examined all of the authorities to which our attention has been directed by the parties, and others disclosed by independent research. The Supreme Court of Iowa, in McKirchy v. Ness, 256 Iowa 744, 128 N.W. 2d 910 (1964), relied upon by appellant and appellees, clearly expounds the principles to be applied in resolving the question. We therefore quote at length from that opinion:

"We have frequently said the defense of nonconsent is one which can be easily made, with little probability it can be met with direct refutation. It is not necessary plaintiff adduce such direct testimony. When ownership of the motor vehicle is admitted,

as it is here, a prima facie case is made on this issue by plaintiff, or as it is sometimes expressed an inference, or a presumption is created that the vehicle was being operated with consent of the owner, and there must be sufficient showing to the contrary if the owner would avoid that finding. Plaintiff may aid this inference of law by direct evidence and by proof of facts and circumstances from which inferences may be drawn. As we have said, this inference is not a strong one, and it in no way changes the burden of proof. The owner may oppose the inference by such admissible testimony as may be available to him. *But such testimony, though positive and direct, is not necessarily conclusive.* It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and credibility of the witnesses depend upon facts and conditions as shown by the record in each case. *This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion.* Our earlier cases which consider these matters are ably discussed and well summarized in Bridges v. Welzien, 231 Iowa 6, 300 N.W. 659. See also Anderson v. Lehner, 243 Iowa 851, 52 N.W.2d 513; Harms v. Ridgeway, 245 Iowa 810, 64 N.W.2d 286." (Emphasis Supplied) l. c. p. 912.

There are, of course, Iowa cases where the evidence was held insufficient, as a matter of law, to prove consent. In Bridges v. Welzien, 231 Iowa 6, 300 N.W. 659 (1941), (cited in McKirchy v. Ness, supra), the court at pp. 661, 662 lists cases where consent was proven, and cases where consent had not been established. It would unduly burden this opinion to discuss all of those authorities. We do, however, take specific note of Olinger v. Tiefenthaler, 226 Iowa 847, 285 N.W. 137 (1939). There, as here, the original permittee granted consent to a third party to drive the automobile that was in-volved in a collision. Louis Tiefenthaler, the owner, had given consent to his brother, Bill, to drive the automobile and the latter had, in turn, placed Thorpe in possession of the automobile. Apparently the owner was without knowledge that Thorpe, or any other person, had driven the automobile while it was in the possession of Bill. The court, however, ruled that the evidence offered by the owner to rebut the presumption was equivocal, vague and unsatisfactory, and that the issue had been properly submitted to the jury.

In the recent case of Tuttle v. Longnecker, 138 N.W.2d 851 (1965), the Supreme Court of Iowa, in a factual situation we find convincingly analogous to our case, held that the question of whether the defendant drove the automobile with the owner's consent was clearly for the jury. In *Tuttle*, the owner testified that he had never told his daughter not to allow others to drive the automobile. The daughter, although remaining in the vehicle, entrusted the driving to a young man, whose reckless conduct resulted in injury to the plaintiffs. The owner further testified that if his daughter saw fit to permit the young man involved to drive the automobile on the evening of the accident, he approved. Not dissimilar is the owner's testimony in our case, that if he had been asked, he probably would have given Priester permission to drive. We recognize that *Tuttle* presents a circumstance not present in our case, i. e., the presence of the daughter in the automobile at the time it was being operated by the third party. We are not constrained to believe, however, that *Tuttle* turned on that fact, or that the Court rested its decision upon this circumstance. It will be noted that on p. 855 of 138 N.W.2d, the opinion states: "At least two recent decisions hold, on a showing by plaintiff less strong than that of this plaintiff, the issue of consent was for the jury. Iowa Mutual Insurance Co. v. Combes, 257 Iowa ——, 131 N.W.2d 751, 754, 755, and McKirchy v. Ness, 256 Iowa 744, 128 N.W.2d 910, 912. See also Bridges v. Welzien, 231 Iowa 6,

300 N.W. 659. These opinions fully state the applicable law and cite our earlier decisions bearing on such question." Having expressly ruled that the evidence required submission of the issue of consent to the jury, the Court then took cognizance of the rule stated in 8 Am. Jur.2d, Sec. 610, p. 161, to the effect that if the original permittee is present in the vehicle, and is still the director of the enterprise, the operation of the vehicle is his operation.' Seemingly, the Court recognized that the element of control, to which it alluded, could be of significance. That this circumstance was not decisive and dispositive of the issue of consent in *Tuttle,* is abundantly clear from the Court's opinion.

■ Tested by the principles promulgated by the Iowa Court, our deliberate judgment is that the evidence fails to conclusively establish no consent. By way of summary, young Webb took possession of and operated the automobile, at will, and without restrictions; Priester had, with knowledge of appellant, operated the automobile on occasions prior to July 11, 1964; appellant made no effort to ascertain whether other persons would accompany his son to Cedar Rapids; appellant placed no restrictions on use of the automobile during the journey; appellant knew that his son intended to visit with one or more former school chums in Cedar Rapids. As a parent of ordinary intelligence, the father undoubtedly knew that any young man, 18 years of age, finds pleasure in the company of other young people, and that, if not expressly restrained, he would likely share the driving with others; appellant admitted he probably would have given his consent to Priester operating the automobile.

The issue of implied consent was properly submitted to the jury in the court's instructions. The jury's finding that such consent had been given, is supported by adequate evidence. We therefore affirm.