437 N.W.2d 898 (1989)
Michaela MORITZ, By and Through her Legally Authorized Representatives, George MORITZ and Joan Moritz; George Moritz, Individually; and Joan Moritz, Individually, Appellants,
v.
Lisa MAACK, Defendant, and
Gerald Eppling, Appellee.
No. 88-551.
Supreme Court of Iowa.
March 22, 1989.
Emmanuel S. Bikakis of Bikakis, Vohs, Storm & Arneson, Sioux City, for appellants.
Timothy S. Bottaro of Kindig, Beebe, Rawlings, Nieland, Probasco & Killinger, Sioux City, for appellee.
Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and ANDREASEN, JJ.
McGIVERIN, Chief Justice.
Plaintiffs George and Joan Moritz are the parents of Michaela Moritz. On September 13, 1986, Michaela was seriously injured in a one-vehicle accident while a passenger in a car operated by Lisa Maack and owned by Gerald Eppling. George and Joan, individually, and on behalf of their daughter, commenced this personal injury and consortium action against defendants Lisa Maack and Gerald Eppling due to the alleged negligence of Maack in the operation of the vehicle. Eppling filed a motion for summary judgment contending that as a matter of law he did not consent to Maack's operation of his vehicle. The district court agreed, dismissing plaintiffs' claims against Eppling. Plaintiffs appealed the district court's ruling, contending the court erred because a genuine issue of material fact existed on the issue of Eppling's consent to Maack's driving the car.
We affirm the ruling of the district court.
I. Background facts and proceedings. The underlying facts of this dispute involve the same automobile collision at issue in Moritz v. Farm Bureau Mutual Insurance Co., 434 N.W.2d 624 (Iowa 1989).
The following facts appear without substantial dispute from the summary judgment record which consisted of the pleadings, depositions, answers to interrogatories and request for admissions, and affidavits.
Gerald Eppling is the father of Brad Eppling. In September 1986, Brad was seventeen years of age and lived with his parents on a farm near Remsen, Iowa.
*899 In part compensation for Brad's work on the farm, Gerald purchased a 1986 Dodge Daytona car for Brad's use. Similar purchases were made for Gerald's older children when they were about Brad's age. Brad contributed between four and five hundred dollars or a small percentage of the purchase price of the car. He also was largely responsible for the car's maintenance and upkeep. Gerald was the sole registered titleholder for the vehicle.
Brad's access to the car was generous but not unlimited. Brad was forbidden by Gerald to allow any other person to drive the car, including his siblings. This restriction was often repeated for Brad's benefit. By Brad's own account, he was reminded approximately once a week not to allow anyone else to drive the Dodge. Despite his father's admonitions, and without his father's knowledge, Brad had in the past allowed some of his friends to drive the car. On the one occasion when his parents learned that Brad had allowed someone else to drive the car, Brad was reprimanded and denied the use of the car for several days.
On the evening of September 12, 1986, Brad drove the car to pick up some friends and visit a girlfriend at her house in LeMars. While at the girlfriend's house, a friend, Lisa Maack, asked Brad if she could borrow his car "to go riding around town." Brad informed Maack that he was not to allow anyone to drive the Dodge. Nevertheless, he furnished Maack with the keys to the car. Maack, Michaela Moritz and another girl left with the car. Later in the evening, Maack returned to ask Brad if she could take the car to Sioux Center to attend a dance. Once again, Brad gave his permission and allowed Maack to take the car.
Maack and Michaela Moritz attended the dance in Sioux Center. At approximately 1:00 in the morning, Maack and Moritz left the dance to return to LeMars. Maack was driving south on U.S. Highway 75 when the car went out of control, left the traveled portion of the road, and hit a tree. Moritz was injured in the collision.
Plaintiffs brought this action against Maack, the operator of the car, and Gerald Eppling, as the owner of the car. Plaintiffs' petition alleged Maack operated the Dodge with Eppling's "knowledge, permission and consent," making Eppling commonly liable with Maack for negligence in causing Michaela's injuries. After answer, Eppling moved for summary judgment and by supporting documentation sought to establish that his authorization to operate the Dodge was strictly and consistently limited to his son Brad. The district court ruled Eppling conclusively showed Maack's operation of the car was without Gerald Eppling's consent and granted the motion for summary judgment.
Plaintiffs appealed, contending the circumstances generated a genuine issue of material fact whether Gerald Eppling impliedly consented to Maack's operation of the car.
II. Summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ. P. 237(c). It is the moving party who must shoulder the burden of showing the nonexistence of a dispute as to a material fact. Knapp v. Simmons, 345 N.W.2d 118, 121 (Iowa 1984). Every legitimate inference that can be reasonably deduced from the evidence should be afforded the party resisting summary judgment, and a fact question is generated if reasonable minds can differ on how the issue should be resolved. Farm Bureau Mut.Ins.Co. v. Milne, 424 N.W.2d 422, 423 (Iowa 1988). While an adverse party generally cannot rest upon his pleadings against a properly supported motion, Iowa R.Civ. P. 237(e), summary judgment is still not proper if reasonable minds can draw different inferences and conclusions from the same undisputed facts. Knapp, 345 N.W.2d at 121. In this respect, summary judgment is functionally akin to a directed verdict. Id. citing Sherwood v. Nissen, 179 N.W.2d 336, 339 (Iowa 1970).
If the conflict concerns only the legal consequences flowing from undisputed facts, however, entry of summary judgment is proper. Jacobs v. Stover, 243 N.W. 2d 642, 643 (Iowa 1976). Thus, it is our *900 task on review to determine whether any genuine issues of material fact exist which would render summary judgment inappropriate and, if not, whether the district court correctly applied the law to the undisputed facts. Royce v. Hoening, 423 N.W.2d 198, 200 (Iowa 1988). See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-259, 106 S.Ct. 2505, 2509-15, 91 L.Ed.2d 202, 211-17 (1986) (construing Federal Rule of Civil Procedure 56 which is analogous to Iowa Rule of Civil Procedure 237).
III. Liability of vehicle owner for a driver's negligence. Plaintiffs' claims against Eppling, as the owner of the vehicle, are predicated upon Iowa Code section 321.493 which in part provides:
In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.
The portion of section 321.493 quoted above was first enacted in 1919 and has remained largely the same since that time. See 1919 Iowa Acts ch. 275, § 12. In enacting the section, the legislature recognized that an automobile is a dangerous instrumentality and invoked the broad police power of the State to hold the owner of an automobile responsible for injury or damage caused by a person who uses the automobile with the consent of the owner. Seleine v. Wisner, 200 Iowa 1389, 1391-92, 206 N.W. 130, 131 (1925). The operation of the consent provision of section 321.493 has been clearly defined by this court in the seventy years since its enactment.
When ownership of the motor vehicle is admitted, as it is here, a prima facie case is made on the issue by plaintiff, or as it is sometimes expressed an inference, or a presumption is created that the vehicle was being operated with the consent of the owner, and there must be sufficient showing to the contrary if the owner would avoid that finding. Plaintiff may aid this inference of law by direct evidence and by proof of facts and circumstances from which inferences may be drawn. As we have said this inference is not a strong one, and it in no way changes the burden of proof. The owner may oppose the inference by such admissible testimony as may be available to him. But such testimony, though positive and direct, is not necessarily conclusive. It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and the credibility of the witnesses depend upon facts and conditions as shown by the record in each case. This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion.
McKirchy v. Ness, 256 Iowa 744, 747, 128 N.W.2d 910, 912 (1964).
This "weak" inference of consent which accompanies the admission of ownership is intended "to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, it was being driven." Hunter v. Irwin, 220 Iowa 693, 698, 263 N.W. 34, 37 (1935). The inference is not absolute and "does not require that every case shall go to the jury, where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome." Curry v. Bickley, 196 Iowa 827, 832, 195 N.W. 617, 619 (1923).
Plaintiffs contend Eppling knew or should have known that Brad would violate the express restrictions against allowing others to drive the Dodge; thus, by allowing Brad continued use of the car, Eppling impliedly consented to others driving it as well. Plaintiffs also contend Brad was the "equitable owner" of the car because he partially paid for it with his own money and work; thus, Brad was the owner for purposes of section 321.493 and was empowered to consent to Maack's use.
A. Consent. Consent of the owner may be express or implied from the circumstances involved. Consent may also be reasonably limited or conditional. Briner v. Hyslop, 337 N.W.2d 858, 869-70 (Iowa 1983); Robinson v. Shell Petroleum Co., 217 Iowa 1252, 1257-58, 251 N.W. 613, *901 616 (1934); Maine v. Maine & Sons Co., 198 Iowa 1278, 1282, 201 N.W. 20, 22 (1924).
In Sultzbach v. Smith, 174 Iowa 704, 156 N.W. 673 (1916), a case which was decided prior to enactment of section 321.493, this court held that a father was not liable for the negligent operation of the family car by his son where the son was operating the car against his father's express restrictions. In Sultzbach, the son was allowed to drive the family car on occasion but was forbidden to operate the car at night or at any time except when accompanied by other members of the family. The son disobeyed his father's restrictions on a number of occasions and was ultimately involved in a collision while joyriding. It was noted then, just as it is today, that there was conflict among the authorities in other jurisdictions concerning the scope and effect of an owner's consent to operate an automobile. Nevertheless, we reversed the district court judgment against the father, stating:
Were it not for the fact that [the father] had expressly forbidden his son on repeated occasions to use the automobile, there might be some basis for the claim by appellee that the son had the implied consent of his father to take the automobile and to use it for his own pleasure. The fact, however, that the appellant did repeatedly forbid his son to use the machine, and the persistent and willful conduct of the son in disregarding the father's commands, ought to be and is a sufficient reason for holding that the son was not using the automobile with the implied consent of the father after the time in question. There is little else that the father could have done in this case to prevent the son's using the car, unless he had physically restrained him.
Id. at 715, 156 N.W. at 676.
A similar result was reached in Rowland v. Spalti, 196 Iowa 208, 194 N.W. 90 (1923), a case decided following enactment of the consent statute. In Rowland, it was held that the father who owned the automobile may not be exposed to liability for his son's negligence where the son operated the car beyond the limited authority granted him. See also Anderson v. Lehner, 243 Iowa 851, 855-56, 52 N.W.2d 513, 515-16 (1952); Robinson, 217 Iowa at 1258, 251 N.W. at 616; Hunter, 220 Iowa at 701, 263 N.W. at 38; Usher v. Stafford, 227 Iowa 443, 448, 288 N.W. 432, 435 (1939).
Consent or authority to use a vehicle may also be limited to the extent the permittee may delegate permission to another to use the vehicle. In general, a broad, unrestricted grant of authority to use an automobile gives rise to a factual issue as to whether this permission also includes an implied grant of authority to allow a third party to use the car. Schneberger v. Glenn, 176 N.W.2d 782, 785 (Iowa 1970). The owner's consent to the use of an automobile by a second permittee, if not expressly provided, may be shown by the circumstances surrounding the original grant of permission, or by a course of conduct on the part of the owner consistent with the first permittee's grant of authority. Id. If the owner denies that the second permittee operated the vehicle with his or her consent, consent may still be established by the owner's course of conduct inconsistent with this denial. Id. at 786. Ultimately, the issue of consent turns on the particular facts and circumstances of each case.
In Schneberger, the vehicle owner, a college student, allowed a professor the use of her car while she was away on a trip. Although the owner initially told another student that he could borrow the car while she was away, she left written instructions with the professor not to allow the other student to use the car. The instructions were disregarded, however, and the car was loaned to the fellow student who subsequently was involved in a collision. We affirmed the district court's directed verdict for the owner. On the issue of consent, we found that by explicitly prohibiting the loan of her vehicle to the other student, the owner overcame the presumption of consent as a matter of law. Id. at 787-88.
Plaintiffs cite Webb v. Moreno, 363 F.2d 97 (8th Cir.1966), for support of their position *902 that consent to operation by a third party may be found in the face of express restrictions to the contrary. In Webb, a case decided under Iowa Code section 321.493, the owner of the automobile involved warned his son when he first obtained a driver's license, not to allow anyone else to drive the family car. Nearly two years later, the family car was involved in a collision while being operated by a third person with the son's consent. The owner denied the car was operated with his consent but subsequently testified that had he been asked by the third party to use the car on the date of the collision, permission would have probably been granted. Id. at 99. The reviewing court found the issue of consent was properly submitted to the jury. Id. at 101. See also Tuttle v. Longnecker, 258 Iowa 393, 399-400, 138 N.W.2d 851, 855 (1965).
In the present case, the record is undisputed that Gerald Eppling permitted only Brad to drive the Dodge, and unlike the father in Webb, Gerald Eppling did not consent to Maack's operation of the vehicle after the fact. Brad was repeatedly advised not to allow anyone else to drive the car and this restriction even applied to Brad's siblings. Brad's prior violations of his father's limitations do not amount to an implied consent to Maack's operation absent some showing that Gerald Eppling was aware of the prior transgressions and condoned his son's behavior. On the only occasion when his father learned of Brad's transgressions, Brad was reprimanded and access to the Dodge was denied for a time. Barring complete denial of access to a vehicle, which would have left Brad virtually stranded on the family farm, it is difficult to imagine what more Gerald Eppling could have done to limit his liability. Cf. Sultzbach, 174 Iowa at 715, 156 N.W. at 676.
Plaintiffs contend that the foreseeability that Brad would loan the car to a friend in violation to his father's express direction provides sufficient foundation to generate a fact issue as to consent. It may be true that at times misbehavior may be foreseeable, but such an observation lays down only a foundation for conjecture as to Gerald Eppling's consent to Lisa Maack's use of the Dodge. It does not provide a substantive basis upon which to find Gerald consented to Maack's driving of the car. See Hunter, 220 Iowa at 701, 263 N.W. at 38.
Gerald Eppling admitted ownership of the Dodge. Thus a weak inference was generated that the car was operated with his consent. Seleine v. Wisner, 200 Iowa 1389, 1392, 206 N.W. 130, 131 (1925). The undisputed evidence shows, however, that Gerald Eppling allowed only his son Brad to operate the vehicle, and that Brad was frequently advised not to allow his friends to drive the car. Cf. Olinger v. Tiefenthaler, 226 Iowa 847, 852, 285 N.W. 137, 139-40 (1939) (where owner failed to produce sufficient evidence to establish lack of consent). We concluded in a similar context:
There is nothing on which a jury could base an inference of consent. There is nothing in this case that indicates the testimony of lack of consent was improbable.... Here there is nothing that rebuts the owner's testimony. There is nothing but the original inference of consent. Were we to hold a jury question was presented by the record here it would mean the inference alone is sufficient to generate a jury question.... When such evidence stands uncontradicted and unrebutted by any facts or circumstances indicating consent there is nothing for the court to do but direct the verdict.
Anderson, 243 Iowa at 855-56, 52 N.W.2d at 516.
In accord are those cases construing the consent provisions of omnibus insured clauses in automobile liability insurance policies. See Schneberger, 176 N.W.2d at 786; Abel v. Dodge, 261 Iowa 1, 8, 152 N.W.2d 823, 826 (1967). Our conclusion in Abel, that more than simple consent to the first permittee is necessary to find consent by the owner to a third party's operation of the vehicle, is in harmony with a majority of jurisdictions passing on the issue in the insurance context. See Annotation, Omnibus Clause as Extending Automobile Liability Coverage to Third Person Using Car with Consent of Permittee of Named Insured, 21 A.L.R. 4th 1146, 1153-54 (1983). Similarly, a majority of jurisdictions *903 have held that operation by a third person alone does not warrant finding implied consent of the owner-insured where the owner strictly prohibited delegation of the use of the vehicle by the first permittee. Id. at 1167. A minority of jurisdictions, however, hold otherwise. Id. at 1170; See e.g. Jones v. Fleischhacker, 325 N.W.2d 633, 637 (Minn.1982) (construing the Minnesota civil liability act).
In sum, we conclude the uncontradicted evidence established Gerald Eppling did not consent to Maack's operation of the Dodge. For that reason, the district court correctly entered summary judgment in his favor.
B. Equitable ownership. Brad Eppling is not a named defendant to this action; therefore, his liability under section 321.493 is not presently at issue. Plaintiffs nevertheless contend that since Brad was the primary operator of the Dodge and contributed toward its purchase and maintenance, Brad was the "equitable owner" of the car, making his consent to Maack's use of the car effective.
As we determined above, Gerald Eppling was the title holder of the Dodge and he neither expressly nor impliedly consented to Maack's operation of the vehicle on September 12, 1986. Section 321.493 establishes liability for the "owner of the motor vehicle" for damage caused by its negligent operation when driven with the "consent of the owner." In its pertinent part, Iowa Code section 321.1(36) defines "owner" as "a person who holds legal title of a vehicle." It is thus apparent Gerald Eppling is the "owner" for purposes of section 321.493.
IV. Disposition. Viewing the facts in the light most favorable to plaintiffs, the uncontradicted evidence shows Lisa Maack operated the Dodge Daytona owned by Gerald Eppling without his express or implied consent. The ruling of the district court granting Eppling's motion for summary judgment is therefore affirmed.
AFFIRMED.