THERESA TUTTLE, as guardian of Jennie Tuttle, a minor, and THERESA TUTTLE, individually, appellee, v. JAMES LONG-NECKER and CHARLES FLEEGE, appellants.

No. 51932.

(Reported in 138 N.W.2d 851)

DECEMBER 14, 1965.

James R. Hamilton, of Storm Lake, for appellant James Longnecker.

Lund & Lund, of Webster City, for appellant Charles Fleege.

Shaw & Shaw, of Pocahontas, and Sackett & Sackett, of Spencer, for appellee.

GARFIELD, C. J. — The principal question presented is whether the evidence is sufficient to support the jury's finding that the damages claimed were caused by the reckless operation of a motor vehicle, within the meaning of section 321.494, Code, 1962, commonly called "the guest statute." We hold the evidence is sufficient.

The action is at law by the mother as guardian of Jennie Tuttle, 15 when she suffered injury, to recover therefor and, in another count, as only living parent, to recover for hospital and medical expense and loss of earnings during minority, caused by the alleged reckless operation by defendant Longnecker, within the meaning of section 321.494, of a motor vehicle. Charles Fleege, owner of the vehicle, was joined as defendant on the theory the vehicle was driven with his consent and hence he was liable for the damage under section 321.493, "the consent statute." Trial resulted in verdict for plaintiff on each count and defendants appeal from judgment thereon.

In addition to the principal question here presented as above referred to, defendants also assert: 1) the evidence is insufficient to support the jury finding that the vehicle was driven with the owner's consent, and 2) that as a matter of law Jennie Tuttle (whom we call plaintiff) assumed the risk from the manner in which the car was operated.

The jury's findings are binding upon us if supported by substantial evidence. Upon this appeal we give plaintiff's evidence the most favorable construction it will reasonably bear. Authorities need not be cited for these propositions. Rule 344 (f)1, 2, Rules of Civil Procedure. We need consider only the evidence favorable to plaintiff, whether or not it was contradicted. Martin v. Cafer, 258 Iowa 176, 179, 138 N.W.2d 71, 73, and citation.

I. We consider first the sufficiency of the evidence of reckless operation of the vehicle.

■ It is unnecessary to repeat the familiar definition of reckless operation as used in section 321.494 or to restate the three elements thereof heretofore recognized by us. Martin v. Cafer, supra, fully states the applicable law and concludes (page 179), "We have required evidence of a persistent course of conduct to show no care coupled with disregard of consequences. * * *." See also article by William G. Wheatcraft, 8 Drake Law Review 128.

Plaintiff and seven other teenagers (two boys and six girls) attended a high school basketball game in the town of Pocahontas on the evening in question. After the game they piled into the Fleege Ford car to go to an eating place a few blocks away. Marcia Fleege inserted the ignition key into the dash or handed it to Longnecker, whom we call defendant, and he drove the car. Plaintiff was at the right side of the front seat, Marcia was in the middle. The other five occupied the rear seat. The eating place was filled with customers so they went north two miles on paved primary Highway 17, then turned west on an intersecting gravel road.

Sharon Hood, who sat on the right side of the rear seat, testified that when they had gone west about one-fourth mile defendant "started swerving the car back and forth, turned the

steering wheel from one side to the other. * * * I saw that he [defendant] had a pleasant smile on his face during this time." He turned the steering wheel one way and then the other so as to make the car zigzag. "It scared me. We were kind of going from one side to the other in the seat as it swerved. * * * I told him to stop swerving the car." He did not stop, he continued, "I could still see his face. I observed the same expression as before, until he lost control of the car. * * * Then he looked frightened. After he lost control it kept going back and forth I don't know how many times, then on the opposite side of the road it hit loose gravel and went directly across the road into the ditch—flew in the ditch."

A farmer living a half mile west of the scene went there soon after the wreck occurred. He said he observed skid marks on the south side of the road and again on the north side. "Q. Then where did those skid marks go? A. From the north side the skid marks made a right angle turn right into the ditch."

The state patrolman who investigated the occurrence testified there was considerable loose material on the road surface, he saw tracks made by the Fleege car from the westbound lane a few feet toward the north ditch, then veering sharply southwest for 75 feet into the ditch on the south side, traffic had obliterated any tracks that might have been farther east.

One of the girl occupants of the car said she remembered the car swerving and nothing more about the accident. Another girl testified it seemed like they hit a bump "or something" but she remembered nothing else. All the girls other than Sharon Hood suffered loss of memory regarding the accident from injuries sustained. All the girls except Marcia Fleege (daughter of the car owner) testified for plaintiff. The boy passenger did not testify.

The jury could properly find from the testimony of the farmer and patrolman the place where the car swerved into the south road ditch was about three-fourths mile west of Highway 17 and thus one-half mile beyond the place defendant started to turn the steering wheel from one side to the other, causing the car to zigzag, heedless of Sharon Hood's protest.

Defendant's version of the accident is that after the car

went over a bridge it struck loose gravel and swayed and swerved violently for about 150 feet, then went into the ditch. He denied he intentionally caused the car to swerve and that Sharon Hood made any protest. He fixed his speed at about 40 miles per hour.

The Hood girl had a pending lawsuit to recover for injuries she sustained in the accident and much of her testimony was denied. However, the jury evidently believed she was telling the truth and declined to accept defendant's version of the occurrence. Of course the jury was the sole judge of the credibility of these and other witnesses and the weight to be accorded their testimony. See Instruction 1.5 of Iowa Uniform Jury Instructions prepared by a committee of the state bar association.

■ It is not for us to determine whether defendant was reckless. Our review is not de novo but for correction of errors at law. Rule 334, R. C. P. Our function is to decide whether the evidence is such that an inference of recklessness may be fairly drawn therefrom. Martin v. Cafer, supra, 258 Iowa 176, 138 N.W.2d 71. See also Whiting v. Stephas, 247 Iowa 473, 477, 74 N.W.2d 228, 230.

■ We are not prepared to hold an inference of recklessness is not permissible here. As before indicated, the jury had a right to believe, and evidently did, that defendant deliberately caused the car to swerve back and forth across the gravel road for about one-half mile heedless of the protest of one of the passengers in an attempt to scare them. Also that no care was used at a time when defendant knew or was chargeable with knowledge of the danger from such conduct. The jury could further find, what experience teaches, that injury from driving in this manner was probable, not merely possible. Driving a car involves enough danger without deliberately seeking to make it more so.

The evidence of recklessness here is much stronger than that held sufficient in Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240. There the car was driven a half block at 15 to 20 miles per hour when in a matter of seconds it swerved off the pavement to the right and sideswiped a pole three and one-half feet therefrom, injuring plaintiff who was standing on the car running board. There was no protest to the driver at his manner of driving but another passenger remarked to plaintiff, "He is probably trying

to scare us." The car stopped within ten feet after hitting the pole. We thought there was a permissible inference defendant was deliberately trying to frighten the passengers and that a finding of recklessness was justified. Here such an inference seems considerably stronger.

Goodman v. Gonse, 247 Iowa 1091, 1103, 76 N.W.2d 873, 880, reviews several guest cases and concludes: "In most of the cases where recovery has been permitted there has been substantial evidence introduced that the operator of the vehicle deliberately, voluntarily or heedlessly drove his car into a situation where the danger or peril was clearly known or should have been discovered in the exercise of ordinary care and prudence." There is substantial evidence here of the kind to which the quotation refers.

II. The question whether defendant drove the car with the owner's consent was clearly for the jury. It is admitted codefendant Fleege was the owner. This was prima facie proof or, as sometimes said, created an inference or presumption the car was driven with his consent. The issue was one of fact for the jury unless the evidence conclusively rebuts the inference of consent. The evidence falls considerably short of doing so. Indeed some testimony strengthens such inference.

At least two recent decisions hold, on a showing by plaintiff less strong than that of this plaintiff, the issue of consent was for the jury. Iowa Mutual Insurance Co. v. Combes, 257 Iowa 135, 142, 131 N.W.2d 751, 754, 755, and McKirchy v. Ness, 256 Iowa 744, 747, 128 N.W.2d 910, 912. See also Bridges v. Welzien, 231 Iowa 6, 300 N.W. 659. These opinions fully state the applicable law and cite our earlier decisions bearing on such question.

The evidence is that Marcia Fleege drove the car, with plaintiff a passenger, to the basketball game with her father's consent. Upon leaving the game Marcia entrusted the driving to defendant while she sat next to him in a position to direct his manner of driving. Codefendant Fleege testified:

"If my daughter saw fit after she learned to drive and was licensed I never told her she wasn't to allow anyone else to drive the car.

"Q. If she saw fit on this evening to let Jim Longnecker

drive the car that was okay with you? A. Yes. * * * someone else could drive if she thought they was a good driver. It was really up to her."

There is no evidence defendant had not previously been a good driver.

In addition to our own decisions cited supra our holding in this division finds support in 8 Am. Jur.2d, Automobiles and Highway Traffic, section 610, page 161, and the annotations cited in the footnotes. We quote from the text: "The implication is that if the person permitted by the owner to use the vehicle is present at the time in the vehicle, and is still the director of the enterprise, the operation of the vehicle is his operation, although the hands on the wheel are those of a substitute, and the negligence in driving will bind the owner. These rules apply in particular where the permittee granting consent to a third person to drive is a member of the owner's family. Only a narrow construction of the statute would permit holding that an owner, placing his vehicle in the care of members of his family to be used for their pleasure or for the family business, would escape liability if his wife or son or daughter should give over the wheel to the management of a friend."

III. Defendant did not establish as a matter of law his affirmative defense that plaintiff assumed the risk of injury from the manner in which he operated the car. It was also proper to submit this issue to the jury. Unlike the issue of consent considered in the preceding division, on which plaintiff had the burden of proof, defendant had the burden on his defense of assumption of risk. Booth v. General Mills, Inc., 243 Iowa 206, 208, 49 N.W.2d 561, 562, and citations; Miller v. Mathis, 233 Iowa 221, 227, 8 N.W.2d 744, 747, 748. It is not often that one who has the burden of proof on such an issue establishes his claim as a matter of law. Spry v. Lamont, 257 Iowa 321, 327, 132 N.W.2d 446, 450, and citations.

In general the doctrine of assumption of risk has a rather limited application to cases arising under our guest statute. See White v. McVicker, 216 Iowa 90, 246 N.W. 385; Stingley v. Crawford, 219 Iowa 509, 511, 512, 258 N.W. 316; Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875; Hebert v. Allen, supra,

241 Iowa 684, 690, 41 N.W.2d 240, 243, 244; Booth v. General Mills, Inc., supra; Bohnsack v. Driftmier, 243 Iowa 383, 390–395, 52 N.W.2d 79, 83–85, which reviews all our previous cases of this kind where the issue of assumption of risk was involved.

The doctrine contended for applies only where it appears plaintiff had full knowledge of the conduct claimed to be reckless and the danger of injury to himself therefrom and with such knowledge acquiesced therein. See Instruction 5.1 of Iowa Uniform Jury Instructions. The doctrine implies that plaintiff had time to choose between a course known to be dangerous and one without danger.

■ Here it may not be said as a matter of law this 15-year-old plaintiff had full knowledge of defendant's reckless conduct and the danger therefrom and deliberately chose to acquiesce therein. Certainly she did not assume any risk from reckless conduct before such conduct took place. So far as shown she had no reason to anticipate it. She did nothing to aid, encourage or cooperate in reckless operation of the car. After the swerving of the car commenced, assuming she was aware of it, plaintiff had only a limited opportunity, if any, to choose between remaining in the car and doing something which would have avoided the peril. Just what choice other than to stay in the car was then open to her is not apparent.

Our conclusion finds support in the precedents cited last above; also Thornbury v. Maley, 242 Iowa 70, 78, 45 N.W.2d 576, 581; Barnes v. Gall, 251 Iowa 921, 927, 928, 103 N.W.2d 710, 714, 715.

We are unable to sustain any of the assigned errors. Hence the judgment is—Affirmed.

All JUSTICES concur.