CLARA C. ABEL, administrator of estate of Raymond Arthur Abel, deceased, appellee, cross-appellant, v. RONALD D. DODGE et al., defendants; DODGE MASONRY CONSTRUCTION COMPANY, appellant, cross-appellee.

LELAND E. KOLLER, appellee, cross-appellant, v. RONALD D. DODGE et al., defendants; DODGE MASONRY CONSTRUCTION COMPANY, appellant, cross-appellee.

No. 52035.

(Reported in 152 N.W.2d 823)

SEPTEMBER 19, 1967.

R. N. Johnson, of Fort Madison, and James W. Crawford and Gene V. Kellenberger, both of Cedar Rapids, for appellant, Dodge Masonry Construction Company.

Wm. H. Napier, of Fort Madison, for appellees, cross-appellants.

James A. Lorentzen, of Des Moines, for defendant Ronald D. Dodge.

GARFIELD, C. J.—These two law actions against Dodge Masonry Construction Company, owner of a pickup truck, and Ronald D. Dodge, driver, asked damages resulting from a collision between the truck and an automobile owned and driven by plaintiff Koller in which plaintiff Abel's decedent, Raymond Arthur Abel, was a passenger. The cases were consolidated for trial, resulting in a jury verdict and judgment for each plaintiff against both defendants. Defendant Masonry Company appeals.

The principal point urged upon us is that the inference or

presumption Ronald was driving the pickup with the owner's consent was conclusively rebutted and the trial court should have so ruled as a matter of law.

The evidence is that Floyd R. Dodge, president and, with his wife, sole owner of the Masonry Company, gave his consent to his twin brother Lloyd to drive the pickup, loaded with cement blocks, to a cabin about 50 miles south of Burlington where Lloyd was to build a wall as an accommodation to a friend. After obtaining such consent Lloyd, without Floyd's knowledge, asked his son Ronald if he wanted to go with him for company. Near the start of the trip Lloyd permitted the son to drive.

When the truck reached U.S. Highway 218, on which it was to be turned from west to south, Ronald failed to stop for the stop sign facing him and drove into the path of the Koller car, proceeding north on 218. There is ample evidence the collision was caused by Ronald's negligence.

I. The trial court instructed the jury (instruction 19) that where as here ownership of the vehicle is admitted, a rebuttable inference is created that it was being driven with consent of the owner; the inference does not change the burden of proof on the issue of consent which remains with plaintiffs. Also, there is an implication that if the person permitted by the owner to use the vehicle is present at the time in the vehicle, and is still the director of the enterprise, the operation of the vehicle is still his operation although the hands on the wheel are those of a substitute and the negligence, if any, in driving will bind the owner. The instruction then proceeds to apply this abstract rule to this particular case.

The Masonry Company's first assigned error is that the inference Ronald was driving with its consent was conclusively rebutted. Its second assignment is that it was error to include in the instruction the last two sentences in the preceding paragraph.

We think this second assignment presents the vital question for our decision. We may assume, without so deciding, that if it were not for the rule stated in the second sentence of the instruction, supra, and its application to this case in the final sentence, the Masonry Company would have been en-

titled to a directed verdict on the issue of consent and to a reversal here.

The language of the instruction to which objection is made was obviously taken from language Tuttle v. Longnecker, 258 Iowa 393, 400, 138 N.W.2d 851, 855, quotes with approval from 8 Am. Jur.2d, Automobiles and Highway Traffic, section 610, page 161. What is there quoted from the cited text is preceded by this:

"§610.—Third person operating vehicle with permittee's consent. Under statutes making the owner of a motor vehicle liable for injuries resulting from its negligent operation while it is being used or operated by another with his permission, it has been held that the owner is liable for the negligent acts of a third person operating the vehicle with the permittee's consent, where the permittee accompanies such driver. The owner is not relieved from liability under such circumstances even though he did not know that a third person was driving his vehicle and did not consent thereto, and even though he had instructed his permittee not to allow another to drive."

█ The evidence is that the permittee (Lloyd) was accompanying his driver son; as stated, the owner, for whom Floyd acted in granting permission to his brother, did not know the son was driving and, of course, did not consent thereto. Indeed Lloyd did not know his son would accompany him when he obtained Floyd's permission to take the pickup.

There is no evidence Floyd instructed Lloyd not to allow another to drive the pickup. Floyd did instruct his brother to put "gas" in it—no other condition was imposed at the time consent was given. Thus we have no occasion to consider, and expressly refrain from doing so, whether the rule referred to in the instruction here would apply where the owner instructs his permittee not to allow another to drive.

The language Tuttle v. Longnecker, supra, approves adds this to what the court told the jury here: "These rules apply in particular where the permittee granting consent to a third person to drive is a member of the owner's family." In Tuttle the owner granted permission to drive to his daughter, a member of his family, who in turn entrusted the driving to a young man in the car. Here Lloyd was not a member of the family

of his twin brother. However, the rule our Tuttle opinion approves is not limited to situations where the permittee is a member of the owner's family although particularly applicable thereto.

We have carefully considered whether the jury could properly find Lloyd was "still the director of the enterprise" after turning the steering wheel over to his son. We think it could so find although a contrary finding on this point would also have evidential support. Lloyd remained in the same seat with his son, warned him a loaded truck could not be stopped as quickly as an empty one "and we tried it at two or three other stop signs," when they approached the intersection where the crash occurred Lloyd called Ronald's attention to the fact the sign said the town of Donnellson (toward which they evidently intended to go) was to the left and Ronald replied "Yes, I see it."

Unless we are to repudiate what we so recently approved in Tuttle v. Longnecker, supra, we must hold the language of instruction 19 of which the Masonry Company complains was proper and the second assigned error should be overruled. We are not persuaded we should thus reverse ourselves.

II. We are not content to rest our decision on what is said in the preceding division.

The pertinent part of our consent statute (section 321.493, Codes 1962, 1966) provides: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with consent of the owner, the owner of the motor vehicle shall be liable for such damage."

In addition to Tuttle v. Longnecker, supra, Iowa Mutual Ins. Co. v. Combes, 257 Iowa 135, 131 N.W.2d 751, and Mc-Kirchy v. Ness, 256 Iowa 744, 128 N.W.2d 910, deal at some length with the question of liability under this statute. Both quote from Bridges v. Welzien, 231 Iowa 6, 300 N.W. 659, which reviews our decisions up to then involving the consent statute.

An annotation to Souza v. Corti, 22 Cal.2d 454, 139 P.2d 645, 147 A.L.R. 861, at 875, 876, states the purpose of such statutes as ours "is the protection of the public. In harmony with that purpose it would seem that an owner of a motor

vehicle should be held liable for injuries or damages which occur while his car is being driven by a third person allowed by owner's permittee to drive or use the car, since the power to prevent injury to the public by the negligent use of his car is vested in the owner. The cases on the question are not, however, altogether in harmony."

An annotation to Krebsbach v. Miller, 22 Wis.2d 171, 125 N.W.2d 408, 4 A.L.R.3d 1, at 10-133, deals at length with this question, closely related to ours: "Omnibus clause of automobile liability policy as covering accidents caused by third person who is using car with consent of permittee of named insured." What is commonly called the "omnibus clause" usually found in automobile liability policies extends protection of the policy to one using the insured vehicle provided such use is with the consent or permission of the named insured. The analogy between such a provision and consent statutes like ours is clear.

The last cited annotation states at page 19: "Where the use to which the automobile was being put was within the scope of the initial permission and the original permittee was a passenger, or the operation of the car by the second permittee was for the original permittee's benefit or advantage, the courts have usually held the second permittee to be within the coverage of the omnibus clause on the ground that the named insured's unrestricted permission to another to use the vehicle includes the permittee's use of it for permitted purposes through its operation by a third person, or on the ground that the policy requires only permission to the 'use' of the car, rather than to the identity of the driver."

To the foregoing the annotation adds that a few courts have held to the contrary. Substantially the same statement quoted above appears elsewhere in the annotation. (See, e.g., page 58.)

An earlier annotation in 160 A.L.R. 1195, at 1213, says: "It has been held in the great majority of cases that the initial permission given by the named assured to the original permittee includes, by implication, authority to delegate the operation of the automobile to an agent or servant where the original permittee is riding with the agent or servant in the car."

8

To like effect is 45 C.J.S., Insurance, section 829c(b), cc., page 902.

Decisions which allow recovery under an omnibus clause in a liability policy where the facts are generally similar to those here include Standard Accident Ins. Co. v. New Amsterdam Cas. Co., 7 Cir., Ill., 249 F.2d 847, and citations; National Farmers Union Prop. & Cas. Co. v. Lukins, 8 Cir., N.D., 329 F.2d 564; Butterfield v. Western Cas. & Surety Co., 83 Idaho 79, 357 P.2d 944; Fireman's Fund Indem. Co. v. Freeport Ins. Co., 30 Ill. App.2d 69, 173 N.E.2d 543; Costanzo v. Pennsylvania Threshermen etc. Ins. Co., 30 N.J. 262, 152 A.2d 589; Krebsbach v. Miller, supra, 22 Wis.2d 171, 125 N.W.2d 408, 411, 4 A.L.R.3d 1, 5; Maurer v. Fesing, 233 Wis. 565, 290 N.W. 191.

Konrad v. Hartford Acc. & Ind. Co., 11 Ill. App.2d 503, 514, 137 N.E.2d 855, 860, states in effect that the view expressed in these and like precedents is the weight of authority.

See also in support of our holding, although not involving an omnibus clause in a liability policy, Webb v. Moreno, 8 Cir., Iowa, 363 F.2d 97, 100, 101, which cites Tuttle v. Longnecker, supra, 258 Iowa 393, 138 N.W.2d 851.

It should be added there was no deviation here from the purpose or route of the trip for which consent of the owner was given the first permittee.

■ III. Instruction 19 also told the jury a general custom or practice in a business (with reference to use of its trucks) may be considered; the Masonry Company contends it was its custom that minors were prohibited from operating its trucks and Lloyd knew of this custom; if the jury finds the claimed custom existed it may take this into consideration in determining whether Ronald was operating the truck with the consent of the Masonry Company.

The company objected to this portion of the instruction (it would seem prior to its being in final form) on the ground it should state that if the jury finds the claimed custom existed that fact should be considered in connection with whether the Masonry Company has carried the burden of sustaining its denial of consent to show Lloyd did not have authority of the company to permit Ronald to operate the truck.

The instruction appears to state substantially what the Masonry Company's objection contended it should state. In so far as the instruction differs from the language of the objection, the instruction seems to be more favorable to the company than the language found in the objection. The objection does not assert a finding the claimed custom existed would be fatal to plaintiff's right to recover or that proof of the custom was conclusive.

Of course the Masonry Company may not assert objections here to any part of instruction 19, or grounds thereof, not timely made upon the trial. Rule 196, Rules of Civil Procedure; Wagaman v. Ryan, 258 Iowa 1352, 142 N.W.2d 413, 417, and citations. No prejudicial error under this record appears in giving the part of instruction 19 relating to custom.

We will say the evidence of custom is inconclusive both as to whether it existed and as to what the claimed custom was. It is argued here the custom was that one permitted to drive a company truck was not to allow another to drive and also that no one like Ronald, under 21, was to drive at all.

Floyd (owner of the Masonry Company) testified in part "Other than word of mouth I can't say we had a strict policy." Asked on cross-examination what his company policy was, Floyd replied "They don't drive until they are over 21. I am not saying this is absolutely it because I might have to send someone across town to get something." Also, when asked if this policy was indefinite, Floyd answered "You fluctuate in any business."

On redirect examination this witness testified "I have told these people (employees) repeatedly when they borrow these trucks for personal use they are to drive them themselves and no minors." The jury could properly find Floyd never made such a statement to Lloyd at anytime and, as stated, no such condition was attached to the consent granted him at the time it was given. Although Floyd testified Lloyd knew of the claimed custom, Lloyd insisted he was not aware of any policy limiting use of company trucks to persons over 21. Lloyd had worked for the company over extended periods as a supervisor and had authority to delegate other drivers to use company pickups.

There can be no question that if Lloyd (first permittee) had not turned over the steering wheel to his son a jury question would be presented on whether he was driving with consent of the owner. We have tried to make it clear that the fact the son was driving, under the circumstances here, does not relieve the owner, as a matter of law, from liability to these plaintiffs for the damage done by the negligence of the driver.

IV. Each plaintiff has cross-appealed on a question of allowance of interest on the amount recovered. Plaintiff Abel asked the trial court to allow interest at 5 percent on the amount of the verdict in her case from the date of death (on the day of the accident) until the date of the judgment. Her cross-appeal is from the court's overruling of her motion. We affirm the ruling.

The instruction to the jury on the measure of recovery for Mr. Abel's death was taken from Iowa Uniform Jury Instructions published by the state bar association. (No. 3.10) The pertinent part is: "The measure of damages for the death of Raymond Abel will be the present worth or value of the estate which he would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death if he had lived out the term of his natural life. This is * * * that amount which estimated at its present worth * * * would have come to his estate from the date of his death to the end of his natural life."

Incidentally, neither plaintiff objected to the instruction. We must assume the jury followed it. Interstate Finance Co. v. Iowa City, 260 Iowa 270, 149 N.W.2d 308, 313; Beal v. Iowa State Highway Comm., 209 Iowa 1308, 1311, 230 N.W. 302, and citations; 5 Am. Jur.2d, Appeal and Error, section 890.

In the quoted instruction the jury was plainly told in effect to allow, in the event of recovery, the present worth or value of the pecuniary loss to decedent's estate. This fairly means that such worth or value was to be computed as of the time of verdict rather than the earlier time of death.

"It is obvious the present worth of a sum payable in the future becomes greater as the time for payment grows nearer.

So the present worth of the pecuniary loss to this estate was greater at the time of the verdict than at the time of decedent's death—and by approximately the amount of interest on the present worth at time of death, if computed from that time, to time of verdict. So the effect of the instructions, which it is presumed the jury followed, was to give plaintiff the benefit of approximately the amount of interest on the present worth of the pecuniary loss to the estate as of the time of death. * * *

"[10] We affirm the ruling of the trial court that interest should not be allowed until after the date of the verdict." Sisson v. Weathermon, 252 Iowa 786, 800, 108 N.W.2d 585, 592, 593.

See also note 48 Iowa Law Review 666, 690, 691; 25A C.J.S., Death (1966), section 109, page 952, note 18; Annotation, 96 A.L.R.2d 1104, 1122–1124.

As in our Sisson opinion, we do not question prior Iowa decisions that where recovery for wrongful death is computed as of the time of death, rather than time of verdict, interest is allowable from time of death. Bridenstine v. Iowa City Elec. Ry. Co., 181 Iowa 1124, 1135–1137, 165 N.W. 435; General Mills, Inc. v. Prall, 244 Iowa 218, 221–223, 56 N.W.2d 596, 598, 599. These decisions are recognized in Hurtig v. Bjork, 258 Iowa 155, 163, 138 N.W.2d 62, 67.

V. The cross-appeal of plaintiff Koller is also from the court's refusal to add to the verdict in his favor interest thereon from the date of the accident to the date of verdict but presents a somewhat different question from the one just considered.

Koller claimed damages for personal injuries, pain and suffering, both past and future, medical and hospital expenses, loss of time from his activities as a farmer, medical and hospital expense for his injured minor sons and destruction of his automobile. The verdict for Koller was for $2446, with no finding as to the amount allowed for any item claimed.

The trial court held that, except for damage to the automobile, the damages claimed were not complete at the time of the accident, there was no way to determine how much, if anything, was allowed for any item claimed, including loss

of the automobile, and interest was therefore not allowable from the time of the accident.

On this appeal Koller asserts only that interest should have been allowed on $1200 he says was agreed upon as the damage to the automobile although such agreement does not appear in the record.

We are not persuaded the trial court's ruling was error. The court was not justified in holding that the verdict necessarily includes $1200 or any other definite sum for loss of the automobile. The other items claimed were clearly incomplete and unliquidated until the verdict was returned. As plaintiff seems to concede, he is not entitled to interest on such items. Mallory v. Jurgena, 250 Iowa 16, 22, 23, 92 N.W.2d 387, 391, and citations; Lawson v. Fordyce, 237 Iowa 28, 67, 68, 21 N.W.2d 69, 89, 90; Bridenstine v. Iowa City Elec. Ry. Co., supra, 181 Iowa 1124, 1135, 165 N.W. 435. See also 22 Am. Jur.2d, Damages, section 191.

Costs in this court are taxed three fourths to defendant Dodge Masonry Construction Company and one fourth to plaintiff administrator and plaintiff Koller in equal parts.— Affirmed on all appeals.

All JUSTICES concur except JUSTICE LeGRAND, who takes no part.