Gertrude I. HALL, Appellee,

v.

Robert A. WRIGHT, John L. Haskins and Grandquist Construction Company, Appellants.

No. 52569.

Supreme Court of Iowa.

Feb. 6, 1968.

Richard L. Pinegar, Duffield, Pinegar & Tapscott, Des Moines, for appellant, Robert A. Wright.

Henry T. McKnight, Des Moines, for appellee.

MASON, Justice.

As a result of transactions hereinafter detailed, plaintiff Gertrude Hall lost her home in Des Moines. She brought this law action in three counts against those involved. Here we are concerned only with the charge of fraud against her attorney Robert A. Wright. The jury returned a verdict for plaintiff of $10,000 actual damages and $15,000 exemplary damages. The trial court overruled Wright's motion for new trial on condition plaintiff file a remittitur to $17,400, which she did. Wright has

appealed from judgment on the reduced amount. He will be referred to as defendant.

Plaintiff owned a home at 1308 Keo Way. Defendant Haskins owned a lot on 15th Street Place on which he was building two houses. In February 1961, following several months' discussion, Mrs. Hall agreed to exchange her home for one of the new houses at 1223 15th Street Place and $1500 cash. She called defendant Wright whom she had known since he was a child and who had previously acted as her attorney. He wrote up the agreement in the form of an offer to buy. It was subject to zoning the Keo Way Property commercial.

At that time there was a discussion as to the deeds and abstracts of title. Mr. Wright told Mrs. Hall a new abstract would have to be drawn up for the Haskins property and that Haskins had clear title. On April 3 Wright wrote Haskins, advising him the Keo Way property was properly zoned and asking for an abstract of title to be examined to ascertain whether or not he had merchantable title.

On June 13 Haskins brought a blank piece of paper to Mrs. Hall for her signature. She called Wright. He said: "Go ahead and sign the papers, Gertrude. I wish you would stop questioning what I tell you to do because I won't tell you anything wrong." She asked about the deed and abstract. Mr. Wright said it hadn't been made up yet "but not to worry about it, he would see that I got my deed and abstract with clear title to 1223 15th Street Place."

She testified: "On about February 1, 1961, when Mr. Wright told me that Haskins could produce clear title and he would see I got it, I believed him. Relying on that I deeded my property." The deed was taken to Wright who notarized her signature and delivered it to Haskins who took the deed to Stoner-McCray System the same day. Wright had Haskins execute the following statement:

"I am receiving a warranty deed of Lot 73 Keo Way, Plat No. 3 for the purpose of securing a loan to pay off Mrs. Hall in accordance with an offer to buy ex. Feb. 6, 1961.

"It is understood that this warranty deed is null and void unless said agreement with purchase(r) is completed, which includes the transfer of title to 1223 15th Street Place and payment of fifteen hundred dollars in cash. John L. Haskins."

Wright kept the original statement and gave Haskins a copy to take with the deed. The deed of the Keo Way property from Mrs. Hall to Haskins was recorded June 14 without recording the conditions under which it was given. Wright at no time examined an abstract but testified he checked the records and found title in Haskins subject to a mortgage. As a matter of fact, Haskins and his wife had deeded 1223 15th Street Place to Grandquist Construction Company on May 27, 1961. They claim the deed was to serve as security. Grandquist was to get a new mortgage and finish the houses which Haskins was financially unable to complete. This deed was recorded June 20, 1961.

On June 18, 1961, Haskins gave Mrs. Hall the key to the 15th Street Place house and she moved in.

By a deed dated June 21, 1961, Haskins transferred the Keo Way property to Stoner-McCray System. It was recorded June 28, 1961. Although the record is not clear as to the exact date, sometime between June 14 and 28, Mr. Wright checked the deed from Hall to Haskins with the attorney for Stoner-McCray. He, therefore, knew at that time Haskins was assuming ownership of the Keo Way property contrary to the conditions under which the deed was delivered to him. There is no evidence he did anything to try to stop the conveyance or whether the transfer had been completed at the time of the conference.

On June 23 he received a check from Haskins for the balance due Mrs. Hall out of the $1500 difference between the agreed value of the properties after her mortgage on the Keo Way property and other expenses were paid. Wright gave Mrs. Hall $392.41 cash after deducting his fees of $150. Also on June 23 Haskins executed a deed to the 15th Street Place property to Mrs. Hall. This deed was kept by Wright and never recorded. Haskins' wife had refused to sign the deed presumably because she had previously signed a deed conveying this property to Grandquist Construction Company. The deed to Grandquist had been recorded June 20.

On the 30th Grandquist mortgaged this property to Polk County Federal Savings & Loan Association.

On July 15 Grandquist contracted to sell the 15th Street Place property to Haskins. By agreement dated August 1 Grandquist and Haskins agreed the property should be conveyed to Mrs. Hall when fully paid for.

Mrs. Hall talked to Mr. Wright in August about the deed and abstract. "He said that he had just found out Haskins had a mortgage on 1223 15th St. Place * * * that his father-in-law is going to give him the money to pay it off, and we will just have to wait.

"I continued to call Attorney Wright constantly, every day. And I called until he told me again that I was a damn nuisance, that I was in the house and what was I worrying about.

"I never knew anything about a Mr. Grandquist."

On September 15, 1961, Wright obtained a Confession of Judgment from Haskins to Gertrude Hall in the amount of $14,500. In response to her written request on October 31, 1961, he delivered to her copies of this judgment, the real estate contract between Haskins and Grandquist and their August 1 agreement.

"In 1962 I talked to Mr. Wright and he told me he had been trying to catch Haskins. He told me to call him if I saw Haskins drive up in his car and that Mr. Wright would come over and we would get this thing straightened out about my deed and abstract.

"When I saw Mr. Haskins come home I called Attorney Wright and he came to my home. He went over to Mr. Haskins' and then they came over to my home and they assured me that the mortgage would be clear and I would get a deed and abstract and clear title to the place."

She saw no more of Wright or Haskins in 1962. By the summer of 1963 Haskins had paid only $450 on the contract with Grandquist. Plaintiff as party in possession was served with 2 notices of forfeiture during 1963. She gave them to Wright. She testified: "He told me not to worry, 'If I have to, I will pay for it my ownself, because I feel morally responsible'."

Defendant apparently was trying to negotiate some arrangement by which Mrs. Hall could stay in the property. Commencing in February, 1964, he tried to get a contract between Grandquist and Mrs. Hall. She testified: " * * * he came to my home February, 1964 and rang the doorbell between 7:30 or 8:00 o'clock in the morning and I was thinking it was Joy, a lady I used to babysit for, and I told him to come in and he said this isn't Joy, this is your attorney, Bob Wright. I said, 'Oh, Bob, come on in.' Then I said, 'I'll get up and get some clothes on and I'll be out there.' And he said, 'Oh, I know where the bedroom is.' And he came into my bedroom.

"Q. What did he say? A. He said, 'I have some papers I want you to sign.'

"He said, 'I want to get your name on this paper to show that you are the rightful, lawful one to have your name on the abstract.'

"And I have a bookcase bed, and he took a book and put it down there and laid this

paper on it like that (indicating), and he said, 'Sign here.'

"I said, 'Well, Bob, wait until I get up and get my eyeglasses so I can read it.' He says, 'You don't have to read behind me.' He said, 'I'm your attorney, Just sign this.' So, I signed it."

"My bedroom door was setting like this (indicating), and right here is the door going out into a little hallway I had, and Attorney Wright left out of my bedroom and he went down the hall, and I guess about three or four steps, then he whirled around and came back in. He said, 'Oh Gertrude,' he said 'Here's a piece of paper that went with that. I forgot to have you sign it.'

"And I said, 'you better let me read that paper'. He said, 'Oh,' he said, 'it just goes with that.' I said, 'Okay'. So, I signed the paper. Well, something kept, I don't know, worrying me, and that paper looked like something was wrong with the paper, so the next day I called Attorney Wright and I said, 'Attorney Wright, what was that little paper you brought back in and had me sign?' He said, 'Oh, that was just a piece that went onto that other paper.' He said, 'It wasn't nothing to it.'"

The second paper she signed was a promissory note. She testified: "Q. Did you know at that time that Exhibit 'N' was a promissory note for $850.00? A. No, sir. I didn't have no $850.00, so it wouldn't have been signed, because I didn't have any."

By October 22, 1964, a real estate contract between Grandquist and Mrs. Hall was fully executed. It was dated May 30, 1964, and provided for her to purchase the 15th Street Place property from Grandquist for $13,500, $1350 down and the $12,000 balance at $100 per month with 6½% interest commencing July 1. The downpayment consisted of Mrs. Hall's $850 promissory note and $500 cash paid by Wright.

Wright admitted Mrs. Hall could not make the monthly payments at the time the contract was executed and expected to make the payments himself. By October 1964, when the contract was finally executed payments were in default for July, August, September and October. Mrs. Hall made no payments on the contract.

In December 1964, plaintiff received notice she was in default $600. Although the record is not too clear, the jury could find this was the first time she realized she was obligated on a contract to buy the place for which she had traded her home. She could not find Mr. Wright and took her problem to Polk County Legal Aid. When a notice of hearing on the forfeiture was served February 1 for a hearing February 8, she contacted her present attorney who paid the rent so she could stay in the home during the remainder of that month. This action was filed shortly thereafter.

I. In motions for directed verdict made at the close of plaintiff's evidence and renewed at the close of all evidence, defendant asserted plaintiff had failed to establish the essential elements of fraud by the quality and quantum of proof required.

The trial court overruled the motions and submitted the case to the jury on the issue of actual fraud.

Plaintiff's claim was that Wright represented to her Haskins had clear title and she would receive a deed, abstract of title and a title opinion showing Haskins had merchantable title to the 15th Street Place property; the representations were false, Wright knew them to be false and made the representations with intent to deceive and defraud plaintiff; that in reliance on such false representations she made, executed and delivered the warranty deed to her Keo Way property; as a result she lost her home and did not receive the 15th Street Place property.

Defendant asserted in his motion for judgment notwithstanding the verdict that

he was entitled to a directed verdict at the close of all evidence, had moved therefor, and the jury did not return such a verdict. In the motion for new trial defendant again asserted the court had erred in overruling his motion for a directed verdict and in overruling timely objections to instructions 4 and 5.

Defendant's motion for judgment notwithstanding was overruled and as stated his motion for new trial was overruled on condition plaintiff accept a remittitur of her judgment down to $17,400. Plaintiff filed acceptance of the court's order for remittitur and judgment for that amount was entered against defendant.

II. In his appeal defendant contends the court erred in overruling his motion for judgment notwithstanding and motion for new trial. He argues plaintiff had failed to establish defendant had made any false representations to plaintiff with intent to deceive her; that the award of exemplary damages is without support; and the award for actual damages is contrary to the evidence and the court's instructions.

The jury did not have before it an issue as to whether Wright, in his fiduciary capacity, fraudulently concealed facts from Mrs. Hall to delay action on her part in order to escape liability until any claim against him was barred by the statute of limitations. Plaintiff argues this here but it is not directly before us. Nor do we have before us at this time the issue of Wright's contractual obligation to pay off the real estate contract made in Mrs. Hall's name.

We are here concerned with the sufficiency of the evidence to sustain a plaintiff's verdict on the issue of actionable fraud. This cannot be presumed but the essential elements thereof must be affirmatively proved by the one who relies on it either for the purpose of defense or attack. Wyckoff v. A & J Home Benevolent Assn., 254 Iowa 653, 657–658, 119 N.W.2d 126, 128–129, and citations. Each and every one

of the following elements must be established by a preponderance of the evidence that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance (7) resulting injury and damage. Wyckoff v. A & J Home Benevolent Assn., supra; Phoenix v. Stevens, 256 Iowa 432, 436, 127 N.W.2d 640, 642, and citations; Syester v. Banta, 257 Iowa 613, 625, 133 N.W.2d 666, 674; Ford v. Barcus, Iowa, 155 N.W.2d 507, and citations, filed January 9, 1968.

Defendant contends plaintiff's evidence was insufficient to establish either the fourth or fifth of these essentials. Plaintiff had made two allegations of fraud. One, defendant told her in February 1961 Haskins could produce clear title. Plaintiff's testimony was somewhat stronger. She testified defendant had said, "Yes, Mr. Haskins has clear title to that [15th Street Place]." The other, on June 13, 1961, Wright promised he would see she got her deed, abstract and clear title to the 15th Street Place property. Defendant argues plaintiff's proof was not clear, satisfactory and convincing that defendant knew the representations were false or either was made with a real existing intent to defraud plaintiff; a mere preponderance of the evidence is not sufficient.

The jury was given the correct rule concerning plaintiff's burden of proof.

In instruction 4 the jury was told that to recover the burden of proof was upon plaintiff to establish by a preponderance or greater weight of the evidence each element we have set out, supra; that in the event of her failure to establish any one or more of them, their verdict would be for defendant. In instruction 5 the jury was advised that fraud is never presumed but must be proved by evidence that is clear, satisfactory and convincing.

In Bixby v. Carskaddon, 55 Iowa 533, 535–536, 8 N.W. 354, 355, we upheld the trial court's rejection of a requested instruc-

tion that the presumption of honesty and, fairness must be overcome by clear and satisfactory evidence, in favor of its instruction that proof is by a preponderance of the evidence. " * * * Fraud must be established by clear and satisfactory evidence. * * * But the quantity of evidence required is no more than will outweigh the evidence on the other side; that is, a preponderance of proof, and no more, is demanded. * * * The evidence must be clear and satisfactory in character. * * *"

" * * * [W]hile the evidence must be clear and convincing, such clear and convincing proof may be met by a preponderance of the evidence. * * *" 37 C.J.S. Fraud § 114.

As explained in Frederick v. Shorman, 259 Iowa 1050, 147 N.W.2d 478, 482, a preponderance of the evidence is not a fixed or unvarying standard. What would be sufficient to constitute a preponderance of the evidence and to sustain a judgment in one case might not suffice in another, where, in addition to the burden resting upon plaintiff in any case, particular presumptions are to be overcome.

▮ Here the presumption in favor of fair dealing requires evidence that is clear and satisfactory in character to preponderate against it.

▮ Stated otherwise the quantity of evidence required of a party having the burden of proof in a civil law action is no more than will outweigh the evidence of the other side; that is, a preponderance of proof. But· in cases such as here where particular presumptions are to be overcome, the quality of evidence must be clear, convincing and satisfactory in character. In support see In re Estates of Koch, 258 Iowa 1251, 1255, 142 N.W.2d 541, 544.

▮ III. We do not agree with defendant's contention that there is insufficient evidence he knew the representations claimed by plaintiff were false. Bearing on the issue of knowledge of falsity or representations relied upon we said in Tott v. Duggan, 199 Iowa 238, 242, 200 N.W. 411, 413:

"In Davis v. [Central] Land Co., 162 Iowa 269, 143 N.W. 1073, 49 L.R.A.(N.S.) 1219, the rule announced in the Boddy Case [Boddy v. Henry, 113 Iowa 462, 85 N.W. 771, 53 L.R.A. 769] was said to be undoubtedly correct in cases where the representation was more or less a matter of opinion or deduction from other facts, but that it was manifest the writer of the opinion had also in mind the rule cited with approval from McKown v. Furgason, 47 Iowa 636, 'that representation of a matter as true as of personal knowledge of which the person making the representation had no knowledge of whatever is a false representation.' And, after an extensive review of authorities, it was further said that it was well established doctrine that *scienter* might be proved by showing (1) actual knowledge of the falsity of the representation; (2) that the statement was made as of the knowledge of the party or in such absolute unqualified and positive terms as to imply his personal knowledge of the fact, when in truth he had no knowledge whether the statement was true or false; or (3) that the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation." The Davis case is cited and quoted in American Universal Ins. Co. v. Scherfe Insurance Agency. (S.D.Iowa, E.D.), 135 F.Supp. 407, 412–413, where a number of Iowa cases bearing on this proposition are cited.

In Riley v. Bell, 120 Iowa 618, 624–625, 95 N.W. 170, 172, where a purchaser of realty brought an action against a broker for damages resulting from a broker's alleged fraud, misrepresentation and concealment regarding the property purchased, it was claimed that during the negotiation, in response to plaintiff's inquiry, defendant represented that to his personal knowledge the condition of the title of the land was perfect in all respects, when in fact he had no knowledge concerning the condition.

The evidence showed a mortgage existed on the land, as the result of which plaintiff was required to pay a judgment on foreclosure to protect his title. We said:

" * * * It may be conceded that, in an ordinary action for deceit by means of false and fraudulent representations, proof of scienter is essential. This is the general rule, * * *. But we think such rule cannot be accepted as controlling in a case such as we now have before us. Where the wrong complained of is that the defendant has induced the plaintiff to act by falsely and fraudulently representing that a certain material fact is true, within his personal knowledge, and injury and damage result therefrom, both reason and authority unite in dictating the wholesome doctrine that he shall not be heard thereafter to assert that in fact he had no knowledge upon the subject * * *."

See also Dimond v. Peace River Land & Development Co., 182 Iowa 400, 408, 165 N.W. 1032, 1035, where we said:

"When one falsely states that to be true which he does not know to be true, for the purpose of inducing another to rely upon it and act upon it, he is just as guilty of actionable fraud in the event he is accepted at his word as if he knew at the time it was not true. One cannot falsely state a fact to be true as of his own knowledge, about which he has no knowledge, for the purpose of inducing another to act, and then, when action follows, escape liability on the mere showing that he did not know the fact to be untrue at the time he made the statement. * * *"

Later in Baker v. Bockelman, 208 Iowa 254, 258, 225 N.W. 411, 412, we said:

" * * * It is the settled law in Iowa that one who asserts, as a fact, without qualification, something that he does not know to be true, asserts, by implication at least, the thing asserted is of his own knowledge, and true, and he is not permitted, as against one to whom the representation is made as an inducement to act, and who is thereby induced to act, to thereafter assert that he did not know his statement to be false." Cited in International Milling Co. v. Gisch, 258 Iowa 63, 73, 137 N.W.2d 625, 632.

In Tone v. Halsey, Stuart & Co., 286 Ill. App. 169, 3 N.E.2d 142, 147, cited in Prosser on Torts, Third Ed., section 102, it is said:

"It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other.

" * * * Scienter (intentional wrongdoing) is an essential element of every action at law for fraud and deceit. * * * However, knowledge of wrongdoing is not absent where representations, in fact false, are made in reckless disregard of whether the same are true or false. Where one of the parties asserts that he had knowledge which he does not have, this is a false representation, to which a plea of ignorance is no reply."

Our function in review is to examine the evidence to determine whether it makes a sufficient showing so that the trial court was warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of the facts was justified in finding defendant had knowledge of the falsity of the representations relied upon by plaintiff. Kregel v. Kann, Iowa, 152 N.W.2d 534, 538, and citations.

In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f)(2), Rules of Civil Procedure as amended. It is likewise viewed when appeal is taken from judgment on verdict for plaintiff. Denison v. Wiese, 251 Iowa 770, 773, 102 N.W.2d 671, 673;

Van Patten v. Chicago, R. I. & P. R. Co., 251 Iowa 1221, 1229, 102 N.W.2d 898, 903. We need consider only the evidence favorable to plaintiff, whether or not it was contradicted. Martin v. Cafer, 258 Iowa 176, 179, 138 N.W.2d 71, 73, and citation; Tuttle v. Longnecker, 258 Iowa 393, 396, 138 N.W.2d 851, 853.

We conclude there is substantial evidence from which a jury might reaesonably draw an inference that defendant in making the representations or either of them knew they were false, or made them recklessly, without any knowledge of their truth, and as a positive assertion.

Even if plaintiff were not to be believed in her assertion that defendant did represent title was clear, there is still his undisputed assertion that Haskins could produce good title, the theory on which the case was submitted to the jury.

Conceding the fact that defendant was not aware of Haskins' lack of title, his wife having deeded the property to Grandquist Construction Company at or before the time defendant's representation was made, his assertion that Haskins could produce good title is tantamount to representing that Haskins then had title free and clear, or at least if any encumbrance existed it could be readily removed. Obviously neither was true as Haskins was no longer possessed of title.

■ It must be remembered that knowledge, like other material facts, may ordinarily be established by circumstantial, as well as by direct, evidence. Boddy v. Henry, 126 Iowa 31, 35, 101 N.W. 447, 448 (Second appeal). Of course the evidence must be such as to make plaintiff's theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, it will be for the jury or other trier of the facts to say whether the circumstantial evidence meets this test. Rule 344(f) 16, R.C.P.

■ IV. Defendant's contention that the evidence was not sufficient to establish the fifth element, an intent to deceive, is without merit.

"Intent to deceive is necessarily of the gist of an action for deceit. The burden of proving it is necessarily upon the plaintiff. The method of proving it is quite another thing. It is always an element of plaintiff's case, necessary to be alleged and therefore necessary to be established.

"However, the same evidence that proves that a defendant made representations known by him to be false, upon which plaintiff relied to his injury, is ordinarily sufficient, also, to establish the intent to deceive. The intent, being a mere act of the mind of the defendant, is usually established by appropriate inference and presumption from the overt acts proved. In such a case the deceit consists in inducing the action of the plaintiff by representations known by the defendant to be false." Smith v. Packard & Co., 152 Iowa 1, 6, 130 N.W. 1076, 1077.

The actual deceit practiced by defendant, was in leading plaintiff to believe that all aspects of the transaction were in order, that Haskins had clear title and could produce clear title at the time when the property was to be exchanged. This at a time when he had no idea what the actual state of the title was, was nothing but deceit.

■ A false statement innocently but mistakenly made will not afford a cause of action; but, where recklessly asserted, it will imply a fraudulent intent. Smithpeter v. Mid-State Motor Co. (Mo., K.C. Court of Appeals), 74 S.W.2d 47, 50.

■ We believe a person is as guilty of actual fraud when in conscious disregard of the truth or falsity of facts his representations are predicated upon he makes such representations to induce action and the party to whom they are made suffers damage by taking the action sought to be induced in reliance upon those representations as surely as if he had intended that very result.

In Boddy v. Henry, supra, 126 Iowa at 37, 101 N.W. at 449, this court said:

"The true rule, as we interpret the law, is that when the party charging false and fraudulent representations has shown that the representations were made, and that they were false, and known to be false by the party making them, the intent to deceive is implied or presumed."

In Mitchell v. Union Pacific Railroad Co. (S.D.Cal.C.D.), 188 F.Supp. 869, 872, where defendant had made a similar contention that the evidence did not support a finding of fraud because there was no evidence of fraudulent intent to cheat or be dishonest, the court in rejecting the contention quoted from Prosser, Torts (Second Ed.), 537–538, (Now page 715, Third Ed.), and said:

"The intent which underlies an intentional misrepresentation * * * involves the intent that a misrepresentation shall be made, that it shall be directed to a particular person * * *, that it shall convey a certain meaning, that it shall be believed, and that it shall be acted upon in a certain way * * *. [T]he fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability, so long as he did in fact intend to mislead." See also 37 C.J.S. Fraud §§ 21 and 22.

There can be no doubt defendant knew from plaintiff's telephone call before she executed the deed to the Keo Way property that his assurances plaintiff would receive a clear title to the 15th Street Place property would be a material factor in inducing plaintiff to act. He must have been conscious of the fact that he had no personal knowledge of Haskins' ability to deliver merchantable title. Even then he stated to plaintiff as of his own knowledge that Haskins could produce clear title.

A jury would be justified in finding that so advising her without knowing that what he said was true constituted a reckless claim of knowledge upon material matters implying a fraudulent intent. Whether, in fact, he intended to deceive and defraud plaintiff was a matter for the jury under all the circumstances in evidence.

V. Defendant asserts under his second assigned error that the jury award of exemplary damages is not supported by the evidence. A similar contention was made and rejected in Syester v. Banta, supra, 257 Iowa at 627, 133 N.W.2d at 675–676. The assignment is without merit.

This second contention that the amount of the jury award for actual damages is contrary to the evidence and the instruction of the court is disposed of by our holding in Division VI, infra.

VI. Although she filed remittitur of $7600, plaintiff contends the original verdict of $25,000 must be deemed reinstated upon defendant's appeal. Basis for plaintiff's claim is the second paragraph of rule 250, R.C.P., added by the amendment to the rule in 1953.

Rule 250 as amended provides:

"Conditional new trial. The court may permit a party to avoid a new trial under rule 243 or 244 by agreeing to such terms or conditions as it may impose, which shall then be shown of record and a judgment entered accordingly.

"Any such term or condition or judgment entered pursuant thereto shall be deemed of no force and effect and the original judgment entered pursuant to rule 223 shall be deemed reinstated in the event of an appeal."

It is clear that under the second paragraph of the rule the original judgment for $25,000 entered upon the verdict as directed by rule 223 is to be deemed reinstated upon defendant's appeal. Castner v. Wright, 256 Iowa 638, 658–659, 128 N.W.2d 885.

In Castner we said, " * * * We have the inherent right to order a remittitur

and modify the award to such sum as we deem just." Accordingly it is ordered that if plaintiff files in the office of the clerk of this court within 30 days from and after the filing hereof, a remittitur of so much of the judgment entered in the trial court for $25,000 as exceeds $17,400 with interest from the date said judgment was originally entered at 5 percent per annum, and costs, the judgments shall stand affirmed as so modified. If such remittitur is not so filed, a new trial is hereby ordered. The cause is remanded for further proceedings in accordance with this opinion.

Modified and affirmed on condition, and remanded.

All Justices concur except MOORE, J., who takes no part.