# IN THE COURT OF APPEALS OF IOWA

No. 14-0575
Filed November 26, 2014

**ANGELA MARIE CLARK,**
Petitioner-Appellee,

**vs.**

**MICHAEL KENDALL PAUK,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

The party subject to a domestic abuse protective order challenges its one-year extension. **AFFIRMED.**

Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

Andrew B. Howie and Tara Lynn Hofbauer of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

The issue on appeal is whether Angela Clark proved by a preponderance of the evidence that Michael Pauk, the biological father of her child, continued to pose a threat to her safety, justifying an extension of the domestic abuse protective order. After reviewing all evidence in the record anew, we agree with the district court's conclusion that Clark met her burden. Therefore, we affirm the one-year extension of the protective order under Iowa Code section 236.5(2) (2013).

I.      **Background Facts and Proceedings**

Before 2009, Pauk and Clark were involved in an intimate relationship. Their daughter was born in July 2008. Less than one year later, Clark sought a protective order against Pauk. In her testimony, she described the April 2009 incident: "Mike was at my house and held me down on a couch, forcing himself on me, wanting to have sex, and I said no." Also in April 2009, Pauk attacked and injured Clark's attorney while the parties were leaving a custody mediation session. He entered a guilty plea to an assault charge, though later claimed he was only acting in self-defense.

On May 26, 2009,[1] the district court issued a final protective order based on the parties' stipulation that Pauk committed a domestic abuse assault against Clark. The order found Pauk represented "a credible threat" to Clark's physical safety and directed him to stay away from her and not to communicate with her in

---

[1] The court had issued a temporary protective order based on Clark's petition under section 236.3(2) on May 7, 2009.

person or through third parties. The order also prohibited Pauk from contact with his daughter until further order of the court.

When the original protective order issued, Pauk lived about six miles away from Clark. A few months later, Pauk moved closer to Clark, relocating within one mile of her residence in Waukee. Pauk claimed he wanted to be closer to his daughter once she started school, though she was only two years old at the time and he did not obtain an order allowing visitation with her.

Pauk's proximity to Clark's residence led to violations of the protective order. In June 2010, both parties alleged the other had violated the order and Clark sought to extend the protective order for another year. The district court found Pauk in contempt and extended the order until June 2011. The court noted Pauk had "certainly demonstrated a willingness to use violence and assaultive behavior in the past," but that he also was "capable of devious and manipulative behavior to accomplish [his] goals of intimidation and abuse, believing that [he] cannot be prosecuted for less obvious behavior." The court concluded it was "apparent that Pauk engaged in harassment of Clark" by repeatedly traveling past her home.

In 2010, Pauk voluntarily agreed to the termination of his parental rights to the child he had in common with Clark, but testified in 2014 that he did not do so willingly. He claimed, "Angie bragged she was going to financially crush me. She said if I ever did see her she would make things up; keep me from her. My attorney had told me it is going to be an ongoing deal." Pauk further testified that

despite the termination of his parental rights, "at some point" he expected to have "a great relationship" with his daughter.

Pauk's defiance of the protective order did not end with the termination of his parental rights. Clark noted in her 2014 testimony that he attempted to communicate with her through third parties in 2011 and 2012. Upon Clark's requests, the district court extended the protective order in 2011, 2012, and 2013. At issue in this appeal is Clark's motion for extension filed on December 24, 2013.

On March 19, 2014, the court heard Clark's evidence in support of the extension and Pauk's testimony in opposition. Clark believed Pauk continued to pose a threat to her safety. Clark testified that as recently as December 7, 2013, a third party approached her on Pauk's behalf, saying: "He has been good to you, and you don't need another protective order. He just wants to see his kid." In the past year, Clark saw Pauk once on the bike trail and numerous times driving around her neighborhood in cars marked for the driver's education company, Street Smarts, where Pauk worked as an instructor. Clark testified she observed a Street Smarts car drive by the intersection of her cul-de-sac street, and even though she could not tell if Pauk was inside, she was nevertheless "alarmed" by its presence.

Pauk testified: "I drive the streets around Waukee as part of my job for about eight or nine hours a day every day. So if you live in Waukee you are going to see me in my driver's ed car most likely." Pauk testified it did not

surprise him that Clark saw him out in the community, but he insisted he had never approached her and did not intend to have contact with her.

At the close of the hearing, the court granted the extension and issued the renewed protective order on March 20, 2014. The district court concluded Pauk's employment as a driving instructor "allows him some sort of anonymity if he chooses to drive by the victim's residence." The court considered that to be threatening, especially in light of Pauk's history of assaults. The court decided Clark established by a preponderance of the evidence that Pauk continued to pose a threat to her safety. Pauk now appeals.

## II.    Legal Standards for Extending Protective Orders

We review cases tried in equity under Iowa Code chapter 236, otherwise known as the Domestic Abuse Act, de novo. *Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994). Under a de novo review we examine the entire record and decide anew the legal and factual issues properly presented. *See In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). "Although our review is de novo, we rely on the trial court's assessment of the witnesses' credibility." *Conklin v. Conklin*, 586 N.W.2d 703, 706-07 (Iowa 1998). We place "substantial reliance on the trial court's ability to observe" the witnesses, and its "implicit judgment with respect" to their credibility. *See In re Marriage of Nelson*, 654 N.W.2d 551, 554 (Iowa 2002).

The legislature intended chapter 236 to be "protective rather than punitive in nature" and, accordingly, we give its provisions a "liberal construction," which will best achieve its purpose. *See Wilker v. Wilker*, 630 N.W.2d 590, 596 (Iowa

2001).  Because the adjudication of protection from domestic abuse under chapter 236 is a civil proceeding, the standard of proof is by a preponderance of the evidence.  *Id.*  A preponderance of the evidence is "the lowest degree of proof upon which issues of fact are determined."  *State v. Beasley*, 50 N.W. 570, 571 (Iowa 1891).  The quantity of evidence required of a party having the burden of proof in a civil action is "no more than will outweigh the evidence of the other side."  *Hall v. Wright*, 156 N.W.2d 661, 667 (Iowa 1968).

The party seeking protection bears the burden under section 236.5.  *Wilker*, 630 N.W.2d at 596.  A court may grant the initial protective order "[u]pon a finding that the defendant has engaged in domestic abuse."  Iowa Code § 236.5(1).  "Domestic abuse" means an assault as described in section 708.1 committed by a person in a specified relationship with the victim.  *See id.*  Parents of the same minor child fall into one of the specified relationships.  *Id.* § 236.2(2)(c).

If the protected party proves a domestic abuse assault, the court issues a protective order, which remains in effect for a fixed period of time not to exceed one year.  *Id.*  The court may extend the original protective order upon a petition filed by either party.  *Id.*  The extension provision states, in relevant part:

> The court may extend the order if the court, after hearing at which the defendant has the opportunity to be heard, finds that the defendant *continues to pose a threat to the safety of the victim*, persons residing with the victim, or members of the victim's immediate family. . . .  The number of extensions that can be granted by the court is not limited.

Iowa Code § 236.5(2) (emphasis added).

### III.    Analysis of Pauk's Claims

Pauk contends the district court was mistaken in finding he continues to pose a threat to Clark's safety.  He supports his contention on appeal with three points: (1) he has not engaged in any physical violence against Clark since the issuance of the original protective order in 2009, (2) he has not threatened physical violence directly or through third parties in the past year, and (3) Clark's fear alone does not justify extending the protective order.

We start with Pauk's third point.  Clark testified to her continuing fear:

> I'm scared of Mike.  I know his history.  I know the violence.  He assaulted me.  He assaulted other people in my presence. . . .  And I just know his history, and I know if we don't have boundaries set he is going to be at my house tonight standing on the front driveway and do it every single day and scare the living daylights out of me and my daughter.  I don't know what he is capable of doing; I just know he is unpredictable.

We agree with Pauk that Clark's trepidation, standing alone, is not enough to prove he continues to pose a threat to her safety.  But this record includes more than Clark's unprovoked fear of Pauk.  We concur with the district court's reasonable conclusion that Pauk has continued to exploit Clark's fear by choosing to drive near her residence—using the cloak of anonymity provided by his employment as a driving instructor.  *Cf. State v. Limbrecht*, 600 N.W.2d 316, 319 (Iowa 1999) (upholding stalking conviction based in part on defendant's drive-bys of the victim's house).  The district court observed Pauk "drives the streets of Waukee in a Street Smarts car eight to nine hours a day because that is his job.  The Court considers the nature of that threatening . . . it provides anonymity, and he has specifically chosen to drive the streets of Waukee to

continue his job." Like the district court, we find it disconcerting that Pauk has decided to continue to live and work in such close proximity to Clark, despite the ongoing existence of the protective order and despite his consent to sever legal ties with his daughter. In our review of the entire record, we are mindful the district court previously found Pauk capable of "devious and manipulative behavior" intended to intimidate Clark.

In addition, we are not persuaded to reverse the district court's decision based on Pauk's assertions he has not engaged in any physical violence against Clark since the issuance of the original protective order in 2009 and has not threatened her with physical violence in the past year. The language of section 236.5(2) does not require the victim to prove a new incident of domestic abuse or a violation of the existing protective order to satisfy the continuing-threat element necessary to extend the order for an additional year. Rather, the statute requires proof the domestic abuser "continues" to pose a threat to the victim's safety. The term "continues" means "to go on with a particular action or in a particular condition; persist." The American Heritage Dictionary 317 (2nd college ed. 1985). In this case, the evidence showed conditions that existed when the order was extended in 2010, 2011, 2012, and 2013, persisted at the time of the 2014 hearing.

Pauk has a history of assaultive behavior, and Clark remained concerned about his violent past. After the court issued the original protective order, Pauk moved to a residence in Clark's neighborhood in Waukee, where he has remained. At the time he moved in 2010, he would walk by Clark's residence to

go shopping because he did not have a driver's license. At the time of the 2014 hearing, his employment as a driving instructor in Waukee provided him with an ostensibly legitimate purpose to drive by her house at any time of day. These circumstances show Pauk continued to pose a threat to Clark's safety.

The court's 2014 extension also was supported by Clark's testimony that three months before the hearing a friend of Pauk approached her to plead his case, urging her not to "get another protective order" because "he just wants to see his kid." Although the protective order prohibits communication through third parties, Clark suspected "Mike is still talking to people about the situation." By contrast, Pauk testified he had moved on with his life, was engaged to another woman, and no longer wanted anything to do with Clark. The district court was entitled to credit Clark's testimony over Pauk's testimony in deciding to extend the protective order. When we liberally construe section 236.5(2) to achieve the provision's purpose to protect victims from domestic abuse, we find Clark proved a continued threat by a preponderance of the evidence.

Finally, Clark asks for attorney fees and costs under section 236.5(4). Such an award is not a matter of right, but lies within the discretion of our court. Iowa Code § 236.5(4) (using permissive term "may" order). Because Clark was required to defend the district court's decision extending the protective order, and because she was able to do so successfully, we award her $1000 in attorney fees. We also hold Pauk responsible for court costs on appeal.

**AFFIRMED.**